IN THE SUPREME COURT OF MISSISSIPPI

NO. 2007-CT-01250-SCT

*COVENANT HEALTH & REHABILITATION OF
PICAYUNE, LP AND COVENANT DOVE, INC.*

*v.*

*ESTATE OF MITTIE M. MOULDS, BY AND
THROUGH JAMES BRADDOCK,
ADMINISTRATOR FOR THE USE AND BENEFIT
OF THE ESTATE AND WRONGFUL DEATH
BENEFICIARIES OF MITTIE M. MOULDS*

**ON WRIT OF CERTIORARI**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/02/2007 |
| TRIAL JUDGE: | HON. R. I. PRICHARD, III |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN L. MAXEY, II |
| | HEATHER MARIE ABY |
| | PAUL HOBART KIMBLE |
| ATTORNEY FOR APPELLEE: | F. M. TURNER |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED.  THE JUDGMENT OF THE CIRCUIT COURT OF PEARL RIVER COUNTY IS REINSTATED AND AFFIRMED - 08/06/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     The issue presented is the enforcement *vel non* of an arbitration clause made part of

a contract.  James Braddock asserts that the contract is one of adhesion and contains multiple

unconscionable provisions. Alternatively, Braddock urges that if the arbitration clause is enforceable, the forum putatively agreed to is unavailable. We have considered more than one case involving this same arbitration agreement, and in other cases, very similar clauses. Almost unanimously, we have declared several of these contested provisions to be unconscionable. Previously, a majority of this Court determined that the contract, as amended by the Court, including the arbitration provision, should be enforced,[1] but not without dissent.[2]

¶2. Despite this Court's admonitions to the drafters of such contracts to eliminate unconscionable clauses and the reluctance of courts to reform and rewrite contracts, a veritable deluge of contests over arbitration issues continues in the courts of our state.

¶3. Based on the issues considered and the application of basic contract-law principles, we conclude that this contract is unconscionable, as it contains numerous unconscionable provisions. The contract weaves unconscionable nonforum terms into the arbitration provision. Arbitration is limited to choice of forum. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628, 105 S. Ct. 3346, 3354, 87 L. Ed. 444, 456 (1985);

---

[1] *Covenant Health Rehab. of Picayune, L.P. v. Brown*, 949 So. 2d 732, 735-42 (Miss. 2007); *Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 521-25 (Miss. 2005). *See also Trinity Mission Health & Rehab. of Clinton v. Estate of Scott,* 2008 WL 73682, at **4-5 (Miss. Ct. App. Jan. 8, 2008); *Trinity Mission of Clinton v. Barber*, 988 So. 2d 910, 922-24 (Miss. Ct. App. 2007); *Covenant Health & Rehab. of Picayune, LP v. Estate of Lambert*, 984 So. 2d 283, 286-89 (Miss. Ct. App. 2006).

[2] *Brown*, 949 So. 2d at 742-48 (Diaz, J., dissenting, joined by Graves, J.; Randolph, J., concurring in part and dissenting in part, joined by Waller, P.J. and Diaz, J., in part); *Stephens*, 911 So. 2d at 526. *See also Scott,* 2008 WL 73682, at *6; *Barber*, 988 So. 2d at 924-26; *Lambert*, 984 So. 2d at 289.

*Stephens*, 911 So. 2d at 525. This conclusion is consistent with our body of law regarding the enforcement of contracts, and conforms to the national body of law addressing similar issues. The course we follow exceeds the excision of numerous unconscionable provisions, and voids the contract. Furthermore, since arbitration is about forum choice, were we to assume arguendo the validity of the contract, the contested agreement to arbitrate still would be unenforceable, as the forum putatively agreed upon is unavailable. The learned trial judge rightly denied arbitration as the forum for this dispute.

¶4.     Braddock (the administrator of the plaintiff estate) filed a wrongful-death action against Covenant Health and Rehabilitation of Picayune, LP ("Covenant Health"), and its general partner, Covenant Dove, Inc., in the Circuit Court of Pearl River County. The circuit court denied Covenant Health's motion to compel arbitration, finding *inter alia* that the admissions agreement, as a whole, was unconscionable. The Court of Appeals reversed and remanded. ***Covenant Health and Rehab. of Picayune, LP v. Moulds***, 2008 WL 3843820, at *5 (Miss. Ct. App. Aug. 19, 2008). Braddock's motion for rehearing was denied. This Court granted Braddock's petition for certiorari. ***Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds***, 999 So. 2d 1280 (Miss. 2009).

<u>**THE COURT OF APPEALS OPINION**</u>

¶5.     The Court of Appeals has expressed its "serious misgivings about the language included in the admissions agreement," but that court concluded that it was "compelled to confirm the substantive conscionability of the admissions agreement and the arbitration clause." ***Moulds***, 2008 WL 3843820, at *5. The Court of Appeals noted that this Court has dealt with the same contract language along with very similar facts. ***Id.***

3

¶6.   Separately, on the issue of the nonavailability of the arbitral forum, the Court of Appeals found that the arbitration agreement would allow the circuit court to choose an arbitrator if the forum chosen by the parties was unavailable.  *Moulds*, 2008 WL 3843820, at \*\*5-6; *See also Scott,* 2008 WL 73682, at \*6.

## BACKGROUND ON APPLICABLE LAW

¶7.   We recognize that the use of arbitration to resolve disputes finds favor under federal and state law.  In *IP Timberlands Operating Co. v. Denmiss Corp.*, 726 So. 2d 96 (Miss. 1998), this Court discussed two conflicting lines of cases.  *Id.* at 103-04.  One favored arbitration, while the other would allow a contracting party to revoke an arbitration agreement if it did so while the agreement was still executory (before an award was made). *Id.*  The Court settled the conflict as follows:

> This Court hereby overturns the former line of case law that jealously guarded the court's jurisdiction. Again, we expressly state that this Court will respect the right of an individual or an entity to agree in advance of a dispute to arbitration or other alternative dispute resolution.

*Id.* at 104.  The *IP Timberlands* Court also recognized that Congress, by enacting section two of the Federal Arbitration Act ("FAA"), "'declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.'"  *Id.* at 107 (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S. Ct. 852, 858, 79 L. Ed. 2d 1, 12 (1984)). *IP Timberlands* cites U.S. Supreme Court precedent for the proposition that "[d]oubts as to the availability of arbitration must be resolved in favor of arbitration." *IP Timberlands*, 726 So. 2d at 107 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 46 U.S. 1, 24,

4

103 S. Ct. 927, 941, 74 L. Ed. 2d 765, 785 (1983)). However, the **Moses H. Cone** Court separately held that the FAA explicitly makes an exception where "grounds [] exist at law or in equity for the revocation of any contract." **Moses H. Cone**, 46 U.S. at 24 (quoting Federal Arbitration Act, 9 U.S.C. §2 (2006)).

¶8. Arbitration agreements and other contract terms should be on equal footing, in that state courts may not invalidate arbitration agreements under laws that affect only arbitration agreements. **Doctor's Assocs. v. Casarotto**, 517 U.S. 681, 687, 116 S. Ct. 1652, 1656, 134 L. Ed. 2d 902, 909 (1996). That is, arbitration clauses shall not receive especial treatment not otherwise available under basic state contract principles. This principle comports with the pronouncement of the U.S. Supreme Court in **Perry v. Thomas**, 482 U.S. 483, 489, 107 S. Ct. 2520, 2533, 96 L. Ed. 2d 426 (1987), which held the only exceptions to the federal policy lie in contracts not evidencing interstate commerce or that are revocable "upon such grounds as exist at law or in equity for the revocation of any contract." **Id.** at 489 (quoting FAA, 9 U.S.C. §2).

¶9. Applying FAA language and U.S. Supreme Court decisions, we have held that "applicable contract defenses available under state contract law such as fraud, duress, and unconscionability may be asserted to invalidate the arbitration agreement without offending the Federal Arbitration Act." **East Ford, Inc. v. Taylor**, 826 So. 2d 709, 713 (Miss. 2002) (citing **Casarotto**, 517 U.S. at 686).

¶10. "[E]quity has a long history of concern with the substantive conscionability of the exercise of rights given by agreement." 7-29 Corbin on Contracts § 29.2 (2009). One court

explained its rationale for denying specific performance of an unconscionable contract as follows:

> a party who has offered and succeeded in getting an agreement as tough as this one is, should not come to a chancellor and ask court help in the enforcement of its terms. That equity does not enforce unconscionable bargains is too well established to require elaborate citation.

*Campbell Soup Co. v. Wentz*, 172 F.2d 80, 83 (3d Cir. 1948).

¶11.    Corbin expounds on the meaning of "unconscionable" as follows:

> "Unconscionable" is a word that defies lawyer-like definition.  It is a term borrowed from moral philosophy and ethics. As close to a definition as we are likely to get is "that which 'affronts the sense of decency.'"  A much-quoted judicial definition is "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."

7-29 Corbin on Contracts § 29.4 (2009) (quoting *Gimbel Bros. Inc. v. Swift*, 307 N.Y.S.2d 952, 954 (1970); *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965)).

¶12.    Our precedent follows the *Williams* ("absence of meaningful choice") language as quoted above from Corbin. *See* *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998) (quoting *Bank of Indiana, Nat'l Ass'n. v. Holyfield*, 476 F. Supp. 104, 109 (S.D. Miss. 1979)). Unconscionability can be procedural or substantive. *East Ford*, 826 So. 2d at 714.  Under "substantive unconscionability, we look within the four corners of an agreement in order to discover any abuses relating to the specific terms which violate the expectations of, or cause gross disparity between, the contracting parties." *Stephens*, 911 So. 2d at 521.  Substantive unconscionability is proven by oppressive contract terms such that "there is a one-sided agreement whereby one party is deprived of all the benefits of the

6

agreement or left without a remedy for another party's nonperformance or breach . . . ." *Holyfield*, 476 F. Supp. at 110. One example of a one-sided agreement is one that allows one party to go to court, but restricts the other to arbitration. *See **Pridgen v. Green Tree Fin. Servicing Corp.***, 88 F. Supp. 2d 655, 658 (S.D. Miss. 2000).

¶13. Our courts may remedy unconscionable agreements as follows:

> "The law of Mississippi imposes an obligation of good faith and fundamental fairness in the performance of every contract . . . this requirement is so pronounced that courts have the power to refuse to enforce any contract . . . in order to avoid an unconscionable result." Section 75-2-302 of the Mississippi Code provides: "If the court as a matter of law finds the contract to have been unconscionable . . . [it] may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

Jeffrey Jackson and Mary Miller, Encyclopedia of Mississippi Law, Vol. 3, § 21.54 (Mississippi Practice Series, 2001) (quoting *Holyfield*, 476 F. Supp. at 109).

¶14. Mississippi Code Section 75-2-302, a Uniform Commercial Code provision, has been applied by this Court to contracts other than for sales of goods. Miss. Code Ann. § 75-2-302 (Rev. 2002). *See **Brown***, 949 So. 2d at 741; ***Stephens***, 911 So. 2d at 525; ***Sanderson Farms, Inc. v. Gatlin***, 848 So. 2d 828, 836 (Miss. 2003) (raising livestock for owner). Corbin on Contracts states that the unconscionability "provision has entered the general law of contracts and has been applied to numerous transactions outside the coverage of Article 2 of the UCC." 7-29 Corbin on Contracts § 29.3 (2009). The official comment to the statute states that a "court, in its discretion, may refuse to enforce the contract as a whole if it is permeated by the unconscionability . . . ." Miss. Code Ann. § 75-2-302 cmt. 2 (Rev. 2002).

## FACTS

¶15. Mittie Moulds, a seventy-six-year-old female, suffering from a host of medical problems, was admitted to the Picayune Convalescent Center ("nursing home") on November 16, 2000. Moulds resided at the nursing home continuously from November 16, 2000, until September 20, 2004. The nursing home is a skilled nursing facility operated by the defendant, Covenant Health. Moulds was neither involved nor present when the 2000 admissions paperwork was signed. Her son, James Braddock, acted as a "responsible party" and signed the admissions agreement, which included an arbitration clause.

¶16. In April 2002, a new admissions agreement was presented to Braddock for his signature. In addition to Braddock's signature on the "Responsible Party" line, Moulds's name also was written on the "Resident" lines. Whether Moulds signed the 2002 document is contested. The 2002 agreement contains clause E4, which states that it "constitutes the entire agreement . . . and supersedes all prior agreements, representations and all understandings of the Parties." The agreement also is signed by a "Facility Representative" and two witnesses. On September 20, 2004, Moulds was transferred from the nursing home to a local hospital, where she died on October 2, 2004. Braddock alleges that Moulds was injured at the nursing home and that these injuries led to her hospitalization and death.

## ISSUES

¶17. "The Supreme Court's review on the grant of *certiorari* shall be conducted on the record and briefs previously filed in the Court of Appeals and on any supplemental briefs

filed. The Supreme Court may limit the question on review." Miss. R. App. P. 17(h) (emphasis in original). We limit our review in this case to the following issues:[3]

(1)   Whether the trial court erred in denying the Motion to Compel Arbitration because the 2002 admissions agreement as a whole is substantively unconscionable.

(2)   Whether the 2002 arbitration agreement is unenforceable because the designated arbitration forum is unavailable.

(3)   Whether an arbitration agreement ever came into effect because no one with legal capacity to bind Moulds executed the admissions agreement.

## DISCUSSION

¶18.   We apply "a de novo standard of review to denials of motions to compel." **Brown**, 949 So. 2d at 736 (citing **Stephens**, 911 So. 2d at 513). The FAA applies to the contract at issue. Contract defenses, other than substantive unconscionability, are inapplicable here.

**I.   Whether the trial court erred in denying the Motion to Compel Arbitration because the 2002 admissions agreement as a whole is substantively unconscionable.**

¶19.   This Court twice before has found the admissions agreement at issue in this case to be a contract of adhesion.[4]  *See* **Brown**, 949 So. 2d at 746; **Stephens**, 911 So. 2d at 520. Contracts of adhesion are those that are "'drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to

---

[3]Other issues briefed include: consideration, fraud in the inducement, third-party beneficiary, equitable estoppel, apparent authority, agency, the definition of "health care decision," and the required showing of incapacity.

[4]The *admissions agreements* in **Stephens** and **Brown** are nearly identical to the one here.  The *arbitration clauses* in those cases are exactly the same as the one here.   In **Stephens,** as in this case, one agreement was signed upon admission, and another was signed later.  **Brown**, 949 So. 2d at 737-740, 746; **Stephens**, 911 So. 2d at 510-11, 522-25.

bargain about its terms. Such contracts are usually prepared in printed form . . . .'" ***East Ford, Inc. v. Taylor***, 826 So. 2d 709, 716 (Miss. 2002) (quoting Restatement (Second) of Conflicts § 203 cmt. b (1971)). This Court stated in ***Stephens*** that finding a contract to be one of adhesion does not automatically mean that the contract or any provision thereof is substantively unconscionable. ***Stephens***, 911 So. 2d at 523. However, such a finding "makes an argument targeting a provision for a substantive unconscionability review easier to prove . . . . [Thus, it] can make a facially oppressive term presumptively invalid." ***Id.***

¶20.    Further, each time this contract has come before this Court, the litigants have urged additional terms to be declared unconscionable and unenforceable. In ***Stephens***, clauses E7 and E8[5] were invalidated by this Court. ***Id.*** at 523-24. In ***Brown***, in addition to E7 and E8, this Court reformed the contract to invalidate clauses C5, C8, E5, E6, E12, E16, and the last sentence of the arbitration agreement.[6] ***Brown***, 949 So. 2d at 741-42. Covenant Health

---

[5]E7 sought to limit the liability of the nursing home to the lesser of $50,000 or the number of days the patient resided at the facility multiplied by the daily room rate. (Note – nothing we do here means that contracting parties cannot agree on liquidated damages. However, contracts intended to exculpate a party of liability for its own negligence draw rigid judicial scrutiny. *See **Turnbough v. Ladner***, 754 So. 2d 467, 469 (Miss. 1999)). E8 is a bilateral waiver of punitive damages. Although E8 ostensibly is bilateral, this Court has noted that it is one-sided in practical effect, as the patient is much more likely to be justified in seeking punitive damages. ***Stephens***, 911 So. 2d at 523-24.

[6]C5 requires the patient and responsible party to hold the facility harmless when an injury could have been avoided with private-duty care. C5 also requires the patient and responsible party to indemnify and hold the facility harmless "from and against claims, loss, costs and expenses incurred as a result of claims against the facility . . . unless such claim, loss, cost and expense is the result of the Facility's *willful misconduct.*" C8 requires the patient and responsible party to hold the facility harmless for criminal acts, whether committed by employees or others. E5 sets preconditions for arbitration, requiring the patient and responsible party to submit to a grievance procedure, while the facility could go to court with its disputes. E6 requires mediation, with the parties to share costs equally. E12 awards all costs to the other party if a party fails to comply with the arbitration procedures.

10

concedes that **all these provisions are unenforceable** in this case. In a previous case before the Court of Appeals, Covenant Health conceded the unenforceability of all these provisions, as well as two additional clauses, D4 and E13.[7] ***Covenant Health & Rehab. of Picayune, LP v. Estate of Lambert***, 984 So. 2d 283, 287 (Miss. Ct. App. 2006). In another case before the Court of Appeals, the Court of Appeals found several provisions unenforceable, including E14[8], which was held to be in violation of a statute. ***Barber***, 988 So. 2d at 923.

¶21. In addition to the plethora of provisions previously adjudicated unconscionable and/or violative of statute, the admissions agreement contains several other questionable provisions. Clause A5[9] is similar to clause C5 in that it would allow Covenant Health to go to court to litigate a dispute. Clause E9 requires the patient to submit any damage recovery to any third-party payor (including Medicare and Medicaid) to reimburse the payor's expenses. Clause E15 requires that any dispute resolution or **legal proceedings** be brought in the county where the facility is located.

¶22. This Court in ***Pitts v. Watkins***, 905 So. 2d 553 (Miss. 2005), reversed a grant of summary judgment in favor of a defendant home inspector. ***Id.*** at 554. An arbitration clause and a limitation-of-liability clause were found to be unconscionable and unenforceable. ***Id.***

---

E16 attempts to institute a one-year statute of limitations. The last sentence of the arbitration agreement refers to other unconscionable provisions, E7 and E8.

[7]D4 is a survival clause, allowing eleven listed clauses to survive the termination of the agreement and the death of any party. E13 is a bilateral waiver of a right to a "jural" trial.

[8]E14 sets a $3.00/page charge for copies requested by parties.

[9]A5 awards Covenant Health all costs (including attorney fees and *other costs of litigation*) if an account becomes delinquent.

at 558. The arbitration clause unreasonably favored the home inspector, allowing him to pursue litigation in court, while the customer was limited to arbitration. *Id.* The attempt to shorten the statute of limitations was unconscionable, because it was oppressive and in violation of a statute. *Id.* The limit on liability also was unconscionable because it left the customer without an effective remedy. *Id.* As noted above, this Court in *Stephens* found two provisions of the admissions agreement to be unconscionable, but allowed enforcement of the remainder of the contract. *Stephens*, 911 So. 2d at 523. Referring to *Pitts*, the *Stephens* Court said:

> We have considered our recent decision in [*Pitts*] and find that this case is clearly distinguishable. In *Pitts* we were confronted with a contract which, inter alia, (1) allowed one party to the contract to go to court to recover damages, while the other party was limited to arbitration, (2) attempted to shorten the statute of limitations, and (3) limited the amount of damages one of the parties could otherwise recover as a matter of law. The language in the arbitration clause in today's case pales in comparison to the oppressive language contained in the arbitration clause in *Pitts*.

*Id.* at 525 (internal citation omitted).

¶23. In *Brown*, this Court found nine provisions of the same contract used in *Stephens* to be unconscionable, and cited *Pitts* multiple times in its analysis of the unconscionable terms. *Brown*, 949 So. 2d at 739-41. The *Brown* Court enforced the remainder of the contract, but not without dissent. *See id.* at 741-48.

¶24. The contract at issue contains unconscionable provisions that mirror those found in *Pitts*, and several more. The application of basic contract principles leads this Court to the same conclusion as that of the learned trial judge, consistent with the "serious misgivings"

12

of the Court of Appeals. We reach the inescapable conclusion that the contract is unconscionable, thus unenforceable.

¶25. The arbitration clause, which leads to court examination of the contract of adhesion, is not the only unconscionable provision. The arbitration clause itself includes, by its own terms and by reference to other provisions, several unconscionable, nonforum terms. "Arbitration is about choice of forum – period." **Stephens**, 911 So. 2d at 525. However, this contract has woven unconscionable, nonforum terms into the clause ostensibly designed to establish forum. The drafters of arbitration clauses, who truly seek the benefits of arbitration, including reduction of dispute costs, would be wise to heed the prior pronouncements of this Court, such as:

> Neither is it wise to allow companies to draft arbitration clauses with unconscionable provisions and then let them try them out in the marketplace, secure in the knowledge that the courts will at worst sever the offending [provisions] after plaintiffs have been forced "to jump through hoops in order to invalidate those agreements."

**Sanderson Farms**, 848 So. 2d at 852 (Cobb, J., dissenting; Smith, P.J., and Carlson, J., joining) (dissent would have held the arbitration agreement unconscionable; plurality did not address unconscionability, as it held that Sanderson Farms had waived its right to compel arbitration) (quoting **Cooper v. MRM Inv. Co.**, 199 F. Supp. 2d 771 (M.D. Tenn. 2002), *rev'd in part, vacated in part on other issues*, 367 F.3d 493 (6th Cir. 2004)). Thus, we adopt the circuit court's rationale that the arbitration clause *sub judice*, coupled with a multitude of unconscionable provisions, makes this an unconscionable contract as a whole.

¶26. Courts of other states have refused to enforce similar contracts which were found to be substantively unconscionable. A Florida district court of appeals, in **Romano v. Manor**

13

*Care, Inc.*, 861 So. 2d 59 (Fla. Dist. Ct. App. 2003), refused to enforce an arbitration agreement which required a waiver of punitive damages, limited noneconomic damages to $250,000, and disallowed awards of attorney fees. *Id.* at 61. The court found that these three provisions made the agreement "substantively unconscionable to a great degree . . . ."[10] *Id.* at 62.

¶27.    The *Romano* analysis has found favor in other cases. *See Woebse v. Health Care & Ret. Corp. of Am.*, 977 So. 2d 630 (Fla. Dist. Ct. App. 2008); *Prieto v. Healthcare & Ret. Corp. of Am.*, 919 So. 2d 531 (Fla. Dist. Ct. App. 2005); *Lacey v. Healthcare & Ret. Corp. of Am.*, 918 So. 2d 333 (Fla. Dist. Ct. App. 2005). In *Lacey*, the court noted that "[t]he presence of an unlawful provision in an arbitration agreement may serve to taint the entire arbitration agreement, rendering the agreement completely unenforceable." *Lacey*, 918 So. 2d at 335 (quoting *Presidential Leasing, Inc. v. Krout*, 896 So. 2d 938, 942 (Fla. Dist. Ct. App. 2005)). That court also found that the absence of a severance clause distinguished *Lacey* from previous cases in which the court severed unlawful provisions, but the court was more persuaded by the fact that the agreement was "titled an 'arbitration and limitation of liability agreement.'" *Lacey*, 918 So. 2d at 335. This "suggest[ed] that the offensive limitations of liability [went] to the 'essence' of the contract." *Id.* The agreement in this case is simply titled "Arbitration," but weaves in unconscionable waivers and award limits. Another similarity between the Florida cases and this case is the fact that the courts

_____

[10]The court also found that the agreement was in violation of a Florida statute, the Nursing Home Resident's Rights Act, a remedial statute enacted after an investigation showed substantial abuse of nursing home residents. *Id.* at 62-63. The court also found the agreement procedurally unconscionable, as Florida, unlike Mississippi, will not hold an agreement unenforceable unless both types of unconscionability are proven. *Id.* at 62.

repeatedly have been required to deal with the same or very similar arbitration agreements. *See* **Woebse**, 977 So. 2d at 634; **Prieto**, 919 So. 2d at 533; **Lacey**, 918 So. 2d at 334.

¶28.   Tennessee also has found similar agreements unconscionable.   **Hill v. NHC Healthcare/Nashville, LLC**, 2008 WL 1901198, at *13 (Tenn. Ct. App. Apr. 30, 2008) (requirement of party bringing the action to pay up-front fees of approximately $18,000 "prevents vindication of a statutory right").  Tennessee rightly recognizes, as do we, that the purpose of arbitration is to provide a forum for dispute resolution.  In **Hill**, the court stated the following:

> With regard to substantive unconscionability, our Supreme Court has determined that an agreement to arbitrate, including one made in the context of the provision of medical services, is not generally unconscionable when its provisions do not alter legal duties or limit liabilities and simply provide an alternative forum for the resolution of disputes.  However, inequality in the provisions of such an agreement, where the agreement is an adhesion contract, may result in a finding of unconscionability.

**Hill**, 2008 WL 1901198, at *12 (citing **Taylor v. Butler**, 142 S.W.3d 277, 286 (Tenn. 2004); **Buraczynski v. Eyring**, 919 S.W.2d 314, 321 (Tenn. 1996)).

¶29.   Other state courts have invalidated arbitration agreements in various types of contracts. The Supreme Court of Alabama found an arbitration agreement included in a loan contract to be unconscionable in **American General Finance, Incorporated v. Branch**, 793 So. 2d 738 (Ala. 2000).  The court applied the factors from its precedent case, **Layne v. Garner**, 612 So. 2d 404 (Ala. 1992).  The **Layne** factors are:

> (1) whether there was an absence of meaningful choice on one party's part, (2) whether the contractual terms are unreasonably favorable to one party, (3) whether there was unequal bargaining power among the parties, and (4) whether there were oppressive, one-sided, or patently unfair terms in the contract.

15

*Id.* at 408.  The court held that the contract was unconscionable for one of the plaintiffs, Branch, but not the other, Reaves.  ***Branch***, 793 So. 2d at 751-52.  The distinguishing factor was that at the time Branch signed the contract, it would have been much more difficult to obtain a loan without having to agree to arbitration; thus Branch had no meaningful choice.  *Id.*

¶30.    A California court found an arbitration agreement and other provisions of an employment contract to be unconscionable.  ***Stirlen v. Supercuts***, 51 Cal. App. 4th 1519, 1552 (Cal. Ct. App. 1997).  The court explained its analysis as follows: "an adhesive contract 'would remain fully enforceable unless (1) all or part of the contract fell outside the reasonable expectations of the weaker party *or* (2) it was unduly oppressive or unconscionable under applicable principles of equity.'" *Id.* at 1530 (quoting ***Izzi v. Mesquite Country Club***, 186 Cal. App. 3d 1309, 1317 (Cal. Ct. App. 1986) (emphasis in original)). The court found the contract in ***Stirlen*** to be excessively one-sided in that it allowed the employer to use the court system, but restricted the employee to arbitration and a shortened statute of limitations, not subject to tolling.  *Id.* at 1542.  The employee gave up statutorily-protected rights that would have allowed punitive damages, while the employer was protected from liability for all fraud, willful injury, and violation of laws.  *Id.*  In finding that the FAA would not be offended by nullifying this agreement, the court stated, "The FAA was clearly not designed to save an arbitration agreement as egregiously one-sided as the one before us, which would not survive scrutiny under legal or equitable principles applicable in almost every American jurisdiction."  *Id.* at 1546.

16

¶31.   Other state courts have held arbitration agreements to be unconscionable. *See **Bolter***

***v. Superior Court***, 87 Cal. App. 4th 900, 902, 909 (Cal. Ct. App. 2001) (in carpet-cleaning

franchise agreement, excessive costs and limitation on damages prevented a remedy);

***Discover Bank v. Shea***, 827 A.2d 358, 366 (N.J. Super. Ct. Law Div. 2001) (credit-card

agreement was contract of adhesion with unconscionable provisions); ***In re Turner Bros.***

***Trucking Co.***, 8 S.W.3d 370, 372 (Tex. App. 1999) (employment contract); ***Wilder v.***

***Whitaker***, 169 Cal. App. 3d 969, 975 (Cal. Ct. App. 1985) (employment contract at issue had

been determined to be adhesory by a prior opinion of the court).

¶32.    Like the courts listed above, this Court also has refused to enforce unconscionable

arbitration agreements outside the nursing home arena. *See **Pitts***, 905 So. 2d at 558 (home-

inspection contract); ***East Ford***, 826 So. 2d at 717 (sale of a used car).  As noted above, FAA

section two prevents a court from singling out arbitration agreements for special or unique

analysis. *See* 9 U.S.C. § 2; ***Casarotto***, 517 U.S. at 687.  We also have found contracts to be

unconscionable for clauses other than arbitration agreements. *See **Entergy Miss., Inc. v.***

***Burdette Gin Co.***, 726 So. 2d  1202, 1208 (Miss. 1998); ***In re Will of Johnson***, 351 So. 2d

1339, 1341 (Miss. 1977) (wife prohibited from renouncing or contesting husband's will).

¶33.   Our law "imposes an obligation of good faith and fundamental fairness in the

performance of every contract governed thereby . . . ." ***Holyfield***, 476 F. Supp. at 109.

Caselaw and legislative enactments address refusal to enforce a contract in its entirety, or any

portion thereof, if it is found to be unconscionable. *See* Miss. Code Ann. § 75-2-302(1)

(Rev. 2002); ***East Ford***, 826 So. 2d at 717; ***Burdette Gin***, 726 So. 2d at 1208; ***Johnson***, 351

So. 2d at 1341; ***Terre Haute Cooperage v. Branscome***, 203 Miss. 493, 503, 35 So. 2d 493,

17

541 (1948). Mississippi and U.S. Supreme Court precedent provide for the invalidation of arbitration agreements for unconscionability without offending the FAA. *East Ford*, 826 So. 2d at 711 (citing *Casarotto*, 517 U.S. at 686). Accordingly, we hold that the contract in its entirety, and this arbitration agreement specifically, are unconscionable and unenforceable. To do otherwise would "result[] in this Court rewriting a contract which favors a goal of the nullifying party; an undeserved reward for unconscionable conduct." *Brown*, 949 So. 2d at 748 (5-4 decision) (Randolph, J., dissenting).

¶34. This decision does not prevent nursing homes, or for that matter, any legal entity or person from entering contracts that include arbitration agreements. Our courts will enforce arbitration agreements when they do not seek to impose terms deemed unconscionable by this Court. *See Bedford Health Props., LLC v. Estate of Davis*, 2008 WL 5220594, at *4 (Miss. Ct. App. Dec. 16, 2008); *Forest Hill Nursing Ctr., Inc. v. McFarlan*, 995 So. 2d 775, 785 (Miss. Ct. App. 2008).

¶35. As *Brown* and *Stephens* dealt with nearly identical contracts, to the extent that those rulings are inconsistent with today's opinion, they are overruled.

**II.    Whether the 2002 arbitration agreement is unenforceable because the designated arbitration forum is unavailable.**

¶36. In *Stephens*, this Court stated, "Arbitration is about choice of forum – period." *Stephens*, 911 So. 2d at 525. In the admissions agreement signed on April 24, 2002, Covenant Health proposed to have any disputes *administered* by AAA as follows:

> The Resident and Responsible Party agree that any and all claims, disputes and/or controversies between them and the Facility or its Owners, officers, directors or employees shall be resolved by binding arbitration administered by the American Arbitration Association and its rules and procedures.

18

The AAA announced nearly seven years ago that it "no longer accept[s] the administration of cases involving individual patients without a post-dispute agreement to arbitrate."[11] The AAA continues to administer health-care arbitrations in which "businesses, providers, health care companies, or other entities are involved on both sides of the dispute." *Id.* The AAA stated that the policy was a part of its "ongoing efforts . . . to establish and enforce standards of fairness for alternative dispute resolution . . . ."[12] The Senior Vice President of the AAA was quoted as follows:

> Although we support and administer pre-dispute arbitration in other case areas, we thought it appropriate to change our policy in these cases since medical problems can be life or death situations and require special consideration.

*Id.*

¶37. Another alternate-dispute-resolution organization, the American Healthcare Lawyers Association ("AHLA"), has made a similar announcement about healthcare arbitrations. *Owens v. Nexion Health at Gilmer, Inc.*, 2007 WL 841114, at *3 (E.D. Tex. Mar. 19, 2007). The AHLA also has announced that it would administer an arbitration without a post-dispute agreement only if ordered to do so by a court. *Id.* Covenant Health argues that AHLA's policy is relevant to this case and speculates that the AAA is likely to follow the AHLA's lead and administer disputes if ordered to do so. The AAA has made no such announcement.

---

[11] AAA Healthcare Policy Statement, http://www.adr.org/sp.asp?id=32192 (last visited July 31, 2009).

[12] Archive of AAA Healthcare Policy Statement, http://web.archive.org/web/20060930010034/http://www.adr.org/sp.asp?id=21975 (last visited July 31, 2009).

19

¶38.    The Court of Appeals correctly found that it should not speculate whether the AAA might agree to administer the dispute. *Moulds*, 2008 WL 3843820, at *6.  However, the Court of Appeals went on to find that the arbitration agreement allows the circuit court to choose an arbitrator if the agreed forum is unavailable. *Id.*  We do not share this reading. The language referred to by the Court of Appeals relates only to selection of an arbitrator and not more generally to the choice of forum or the rules and procedures to be utilized. Assuming arguendo that the forum was chosen by the parties to be the AAA, and it refused to accept the dispute, this defeats the primary stated purpose of arbitration, that being to avoid crowded dockets (speed of resolution) and involvement of courts (reduce costs of resolution).  Thus, a court should not become a party to redrafting or reforming agreements. A court should not be used to reform a contract to select a forum not anticipated by either of the parties.  To do so, the court must become involved and assume powers over parties. Courts' involvement is limited to determining whether to compel agreed-upon arbitration *vel non*.  As the court's participation and involvement increase, the reason for arbitration in the first place becomes greatly diminished, and its purpose defeated.

¶39.    U.S. Supreme Court and Mississippi precedent supports this conclusion, as follows:

> The U.S. Supreme Court has stated that, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.' . . .The Supreme Court has also said that, "section 4 of the FAA does not confer a right to compel arbitration of any dispute at any time; it confers only the right to obtain an order directing that 'arbitration proceed in the manner provided for in [the parties'] agreement*.'

*B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 487-88 (Miss. 2005) (emphasis in original) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648,

106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648, 655 (1986); *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 475, 109 S. Ct. 1248, 1253, 103 L. Ed. 2d 488, 497 (1989)). In *B.C. Rogers Poultry*, this Court affirmed the denial of a motion to compel arbitration because the dispute concerned contracts entered into before the parties had instituted an arbitration agreement. *Id.* at 493. In *A T & T Techs., Inc.*, the U. S. Supreme Court held that arbitrability should be decided by courts, not arbitrators. *Id.* at 651. In *Volt Info. Scis.*, the U.S. Supreme Court held that arbitrations should be governed by the rules chosen by the parties, not by FAA-mandated rules. *Id.* at 476 (California statutory rules applied in accordance with the arbitration agreement's terms).

¶40.    In *Magnolia Healthcare, Inc. v. Barnes*, 994 So. 2d 159 (Miss. 2008), a plurality of this Court would have held that an arbitration agreement was unenforceable because the parties' forum choice was no longer available. *Id.* at 162. In *Barnes*, the arbitration agreement called for the use of AHLA rules, but did not require AHLA administration. *Id.* at 160. The plurality cited AHLA rules, which require a post-dispute agreement to arbitrate. *Id.* The plurality concluded that, because the patient's injuries occurred after AHLA's policy was implemented, and there was no post-dispute agreement, "there was no valid agreement to arbitrate." *Id.* at 162. The *Barnes* rationale applies here. Assuming there were no substantively unconscionable provisions in the agreement, and further assuming Covenant Health prevailed on all other issues, the agreement called for the AAA to administer disputes, and the trial court was required to chose an arbitrator; the arbitrator would still be bound to apply AAA rules, which would require Braddock to agree, post-dispute, to be bound to arbitrate, which he has expressly disavowed his interest in doing.

21

¶41. In ***National Iranian Oil Co. v. Ashland Oil***, 817 F.2d 326 (5th Cir. 1987), the Fifth Circuit Court of Appeals held that an arbitration agreement was unenforceable because the chosen forum was no longer available. ***Id.*** at 328; *see also **Northrop Grumman Ship Sys. Inc. v. The Ministry of Def. of the Republic of Venezuela***, 2009 WL 1959482 (5th Cir. July 9, 2009). National Iranian Oil Co. ("NIOC") drafted the agreement, which called for arbitrations to occur in Tehran and to be governed by Iranian law. ***Id.*** at 334. After the revolution in Iran, NIOC attempted to institute arbitration proceedings in Mississippi. ***Id.*** at 327-28. For NIOC to prevail, it was required to show that the situs was merely a minor consideration and that the essence of the bargain was to arbitrate. ***Id.*** at 333. Here, Covenant Health prescribed AAA administration. Both of the agreements in this case (November 2000 and April 2002) have the same language requiring AAA administration. Moulds remained in the nursing home for two years after the AAA announced its new policy. Covenant Health replaced the original agreement with another agreement with different terms. Administration by the AAA was a contract requirement, which remained a part of the agreement, if it was otherwise enforceable.

¶42. Covenant Health urges that, even if the clause requiring AAA administration is stricken from the contract, arbitration still should be compelled here. Covenant Health cites clause E6, claiming that it offers proof that the parties agreed generally to arbitrate without regard to which organization should administer it. This argument fails for two reasons. It ignores the fact that Covenant Health has conceded, and this Court has agreed, that E6 is unenforceable. It also misreads the language of E6, in which the parties agree that if

22

mediation fails, they will "arbitrate the dispute, claim and/or controversy as set forth below [in the arbitration agreement.]"

¶43. The courts of several other states have dealt with the AAA/AHLA policy-change issue. We find no other state court that has held that an arbitration may go forward if the arbitration agreement requires AAA administration. *See Mathews v. Life Care Ctrs. of Am., Inc.*, 177 P.3d 867 (Ariz. 2008) (enforced agreement that required AAA arbitrators, but not AAA administration); *Hill*, 2008 WL 1901198, at *16-17 (held agreement unconscionable, but did not reach on forum choice); *Owens v. Nat'l Health Corp.*, 263 S.W.3d 876 (Tenn. 2007) (court enforced agreement that called for either AAA or AHLA administration, but the court noted that AHLA would administer if ordered); *Blue Cross Blue Shield v. Rigas*, 923 So. 2d 1077 (Ala. 2005) (enforced agreement that required AAA rules, but not AAA administration); *Broughsville v. OHECC, LLC*, 2005 Ohio 6733 (Ohio Ct. App. 2005) (enforced agreement which called for an AHLA procedure).

¶44. Here, the Court of Appeals held that the arbitration agreement allows the circuit court to pick an arbitrator if the forum is unavailable. *Moulds*, 2008 WL 3843820, at *6. We find no basis for such an interpretation of the agreement. The agreement requires that the arbitration be *administered* by the AAA in accordance with the rules and procedures of that organization. The language referred to by the Court of Appeals relates only to the selection of an arbitrator, not the overall rules and administration of the arbitration. The rules of the organization referenced in the agreement, the AAA, require that it refuse to administer arbitrations of this type of case, unless the parties agree post-dispute to be bound by arbitration. Thus, not only are our courts being asked to rewrite the agreement in favor of

23

the drafter, but also now to select a forum not anticipated by either party. We decline. The whole purpose of arbitration is to avoid dispute resolution in a court of law. In declining, we follow the rationale espoused by a plurality of this Court in *Barnes*, 994 So. 2d at 161-62.

¶45. We find that Covenant Health sought to have its disputes administered by the AAA. That forum refuses to arbitrate without a post-dispute agreement. There is no post-dispute agreement. This court declines to order the contract rewritten and declines to order the lower court to pick a forum.

> **III. Whether an arbitration agreement ever came into effect because no one with legal capacity to bind Moulds executed the admissions agreement.**

¶46. We choose not to address Braddock's authority to bind his mother to arbitration, for issues of material fact exist whether Moulds signed the 2002 contract, thus preventing a *Hinyub* analysis at this stage of the proceeding. *See Miss. Care Ctr. of Greenville, LLC v. Hinyub*, 975 So. 2d 211 (Miss. 2008).[13]

¶47. The two cases are distinguishable in other relevant ways. In *Hinyub*, the arbitration agreement was a separate document, which stated explicitly that arbitration was not a precondition for admission. *Id.* at 218. Here, the nursing-home administrator asserted post-suit that arbitration was not a pre-condition for admission, but such a policy is not found within the contract we are analyzing. Further, the *Hinyub* arbitration agreement was

---

[13]The nursing-home administrator submitted an affidavit in which she acknowledged the signatures on the Admissions Agreement as those of Mittie Moulds as resident and James Braddock as responsible party. However, Braddock's affidavit states that Moulds was not present, and that she would have been unable to read or understand the contract, if it had been presented to her. In *Hinyub*, it was undisputed that the patient did not sign the arbitration agreement, and that his daughter had signed it for him, along with his other admissions documents. *Id.* at 213.

24

rescindable within thirty days. *Id.* The admissions agreement here, at paragraph D, allowed for termination within one day of signing, but required an immediate discharge from the facility. However, the arbitration clause was one of eleven listed contract provisions[14] that were to survive the admissions agreement, regardless of the reason it was terminated. In *Hinyub*, the admissions documents at issue were signed upon admission. *Id.* at 213. Here, the "admissions agreement" in dispute was signed seventeen months after admission.

## CONCLUSION

¶48. For the reasons stated, we reverse the judgment of the Court of Appeals and reinstate and affirm the judgment of the Circuit Court of Pearl River County. The case is remanded to that court for further proceedings consistent with this opinion.

¶49. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE CIRCUIT COURT OF PEARL RIVER COUNTY IS REINSTATED AND AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, LAMAR, KITCHENS, AND PIERCE, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION. CHANDLER, J., NOT PARTICIPATING.**

**GRAVES, PRESIDING JUSTICE, CONCURRING IN RESULT ONLY:**

¶50. I agree with the majority that the arbitration provision here is unconscionable. I write separately because the majority addresses issues raised in the principal briefs but not in the petition for writ of certiorari. I would address only the issues which were put before us in the petition for writ of certiorari.

---

[14]The clauses that survive contract termination are C5, E5, E6, E7, E8, E9, E12, E13, E14, E15, and F. Each of these is described above in one or more of the following sections: already declared unconscionable, violative of statute, acknowledged unenforceable, or questionable.

25

¶51. In the petition, the plaintiffs allege that the Court of Appeals incorrectly found that James Braddock possessed the authority to bind his mother to arbitration. At Mittie Moulds' admission to the nursing home, Braddock signed the admission agreement as her "Responsible Party." The admission agreement contained an arbitration clause.

¶52. In *Covenant Health Rehabilitation of Picayune, L.P. v. Brown,* 949 So. 2d 732 (Miss. 2007), and in *Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 516 (Miss. 2005), this Court determined that an elderly nursing home patient's adult child, acting as a health-care surrogate, could bind the patient to arbitration. The Court did not specifically state that entering an arbitration agreement was a health-care decision covered by Mississippi Code Section 41-41-21, but that is the result of both opinions. The statute provides:

> (1) A surrogate may make a health-care decision for a patient who is an adult or emancipated minor if the patient has been determined by the primary physician to lack capacity and no agent or guardian has been appointed or the agent or guardian is not reasonably available.

Miss. Code Ann. § 41-41-21 (Rev. 2005). A "health-care decision" is defined as:

> (h) "Health-care decision" means a decision made by an individual or the individual's agent, guardian, or surrogate, regarding the individual's health care, including:
>
> (i) Selection and discharge of health-care providers and institutions;
>
> (ii) Approval or disapproval of diagnostic tests, surgical procedures, programs of medication, and orders not to resuscitate; and
>
> (iii) Directions to provide, withhold or withdraw artificial nutrition and hydration and all other forms of health care.

Miss. Code Ann. § 41-41-203 (Rev. 2005).

26

¶53.    I disagree with the majority of this Court inasmuch as I am of the opinion that a decision to arbitrate is not a health-care decision. I previously expressed my opinion that entering an arbitration agreement is not authorized by the health-care surrogate statutes and that an arbitration agreement entered by a surrogate is therefore not binding. *See Magnolia Healthcare, Inc. v. Barnes*, 994 So. 2d 159, 162 (Miss. 2008) (Graves, J., dissenting).

¶54.    The Court of Appeals in the instant case relied on *Covenant Health Rehabilitation of Picayune, L.P. v. Brown,* 949 So. 2d 732 (Miss. 2007), and *Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 516 (Miss. 2005), but failed to note this Court's later opinion in *Mississippi Care Center of Greenville, LLC v. Hinyub*, 975 So. 2d 211, 218 (Miss. 2008). In that case, we discussed *Brown* and *Stephens* and distinguished them on the basis that the arbitration agreements in those cases had been essential parts of the consideration for those contracts. *Hinyub*, 975 So. 2d 211, 218. Arbitration had not been a necessary precondition in *Hinyub*. *Id.* There, the admissions agreement clearly stated that the execution of the arbitration agreement was not a precondition to the furnishing of services to the patient by the nursing home. *Id*. This Court in *Hinyub* held that, since the surrogate was not required to sign the arbitration provision prior to the patient's admission to the facility, then the surrogate lacked the authority to bind the patient to arbitration. *Id*. In sum, the rule after *Hinyub* is that the surrogate can bind the patient to arbitration only if the arbitration clause is a necessary, non-negotiable element of the entire admission contract. If the arbitration clause is not a required part of the contract, then the surrogate cannot bind the patient to arbitration. While I do not agree with this current state of the law, it nevertheless is the law.

27

¶55.    Here, the arbitration clause was not a required provision of the contract. The plaintiffs submitted an affidavit from an administrator at the Covenant Nursing Home who stated that the patient would have been admitted to the facility even if the arbitration agreement had been refused. The administrator stated that Covenant never refused patients based on a refusal to consent to the arbitration provision. The affiant stated that the surrogate could have opted out of the arbitration clause without consequence. This case should simply be decided based on *Hinyub*. Hence, I concur in result only.