KING, JUSTICE, DISSENTING:
 

 ¶ 30. This Court has defined unconscionability to mean "an absence of meaningful choice on the part of one of the parties, together with contract terms [that] are unreasonably favorable to the other party."
 
 Caplin Enters., Inc. v. Arrington
 
 ,
 
 145 So.3d 608
 
 , 614 (Miss. 2014). Today's majority holds that a property-settlement agreement with terms almost solely favoring the wife and child was not unconscionable. With this, I cannot agree. Because the property-settlement agreement in this case was so drastically in Lisa Doe's and the child's favor, I believe that it was both substantively and procedurally unconscionable. Therefore, I respectfully dissent.
 

 A. Timeliness
 

 ¶ 31. Carl Smith's complaint alleged that the agreement had been unconscionable, both procedurally and substantively, and that the settlement agreement should not be enforced in equity. In whole, the allegations in Carl's complaint encompassed the misconduct of Lisa as well as the unconscionable terms of the settlement agreement and overall equity of the agreement. Substantive unconscionability is not based on the misconduct of a party and therefore does not fall under Rule 60(b)(1). Accordingly, at least that part of Carl's complaint fell under Rule 60(b)(6)'s catchall provision: "any other reason justifying relief from the judgment." Although Rule 60(b) states that there is a six-month time limit for other misconduct of an adverse party, the vast majority of the cases that fall under subsection (1) are for fraud and misrepresentation. Thus, in my opinion, procedural unconscionability also is encompassed by Rule 60(b)(6), any other reason justifying relief from the judgment, and therefore is under a "reasonable time" standard.
 

 ¶ 32. The trial court stated that, even if the court had found that Carl's motion was founded on Rule 60(b)(6), Carl had failed to file his complaint within a reasonable time. I disagree. "A reasonable time is determined on a case-by-case basis, turning on the facts in each individual case.
 
 Cucos, Inc. v. McDaniel
 
 ,
 
 938 So.2d 238
 
 , 245 (Miss. 2006). For Rule 60(b) motions:
 

 What constitutes reasonable time must of necessity depend upon the facts in each individual case. The Courts consider whether the party opposing the motion has been prejudiced by the delay in seeking relief and whether the moving party has some good reason for his failure to take appropriate action sooner.
 

 M.A.S. v. Miss. Dep't of Human Servs.
 
 ,
 
 842 So.2d 527
 
 , 530-31 (Miss. 2003) (citations omitted).
 

 ¶ 33. Here, Lisa would not be prejudiced by Carl's failure to seek relief sooner. Despite Lisa also being a physician, Carl has been required to pay for almost everything in their child's life, including $7,000 in child support per month. Carl solely has been required to pay for child support, the child's private school, medical insurance, 529 and MPACT plan, and for a life-insurance policy with the child as beneficiary. Additionally, Lisa has been receiving an extraordinary amount in alimony payments per month. Carl also is paying for Lisa's school loans, in addition to his own.
 

 ¶ 34. Additionally, the circumstances of this case by definition are extraordinary and compelling. Carl clearly has demonstrated good cause for not filing his motion sooner. At the time of his divorce, Carl had HIV, was homosexual without the knowledge of his family, had not disclosed his HIV-positive status to the state licensing board, had engaged in homosexual extramarital affairs, and was in a precarious situation of possibly losing his means to support himself and also losing complete
 contact with his child. Given the totality of the circumstances in this case, Carl's hesitation to contest the property-settlement agreement was reasonable and was for good cause. Thus, I cannot agree with the majority's conclusion that the chancellor had not erred in finding that Carl's filing was untimely. I also cannot agree that Carl's motion lacked merit.
 

 B. Substantive Unconscionability
 

 ¶ 35. "Substantive unconscionability is proven by oppressive contract terms such that 'there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach ....' "
 
 Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock
 
 ,
 
 14 So.3d 695
 
 , 699-700 (Miss. 2009). The Court looks at the four corners of the agreement to discover any terms that cause gross disparity between the contracting parties.
 

 Id.
 

 ¶ 36. The terms in the property-settlement agreement in this case clearly are substantively unconscionable. Despite his more-than-adequate salary, Carl had not been represented by an attorney, while Lisa had been represented by two attorneys. The provisions included:
 

 • Lisa has full and exclusive legal and physical custody of their child.
 

 • Lisa has no obligation to confer with Carl in any decision-making concerning the child, including health, education, and welfare.
 

 • Lisa has complete discretion of visitation and may completely curtail visitation for as long as Lisa desires.
 

 • Although Lisa has complete and sole discretion and custody of the child, Carl is required to pay Lisa $7,000 in cash child support per month until the child receives her baccalaureate degree or is emancipated or reaches age twenty-one, whichever occurs later.
 

 • Carl is required to maintain a reasonable hospitalization insurance policy and is responsible for any deductibles, co-pays, uncovered medical, dental, optical, orthodontic, or counseling expense reasonably necessary for the minor child until the child completes her postgraduate or professional college education.
 

 • Carl is required to pay for the child's automobile of Lisa's
 
 sole
 
 choosing, including purchase price, tag, insurance, and maintenance and upkeep until the child completes her post-graduate or professional college education.
 

 • Carl is required to pay for all costs of the child's first wedding.
 

 • Carl is required to pay all costs and expenses of the child's college education, including any post-graduate and/or professional degrees at a college or university to be selected by Carl, Lisa, and the child, by majority rule.
 

 • College expenses that Carl will be responsible for include, but are not limited to, registration fees, tuition, room and board, books, lab fees, transportation, and sorority dues.
 

 • Carl has been required to pay $100 a month beginning on October 1, 2010, into an irrevocable "529 plan" to secure the child's college funds.
 

 • Carl must fund the child's Mississippi MPACT plan, prepaid tuition, whereby within five years from the first payment all tuition for a Mississippi Institution of Higher Learning, undergraduate education, shall be prepaid.
 

 • Carl must pay for all costs of any private school the child attends until the child graduates from high school.
 

 • Carl is required to maintain a life insurance policy in the minimum amount of $500,000, with the child as irrevocable beneficiary and Lisa as trustee until the child completes her post-graduate or professional college education.
 

 • Carl must designate Lisa as irrevocable secondary beneficiary of the life insurance policy, which status becomes primary and effective either upon the minor child's completion of her post-graduate or professional college education or predeceasing Lisa, whichever may occur first.
 

 • Carl must list Lisa as primary beneficiary
 
 of any and all
 
 pensions held by him, with the child as secondary beneficiary.
 

 • Carl is liable for all debt in his name, including:
 

 - his student loans in the amount of $269,000
 

 - Lisa's student loans in the amount of $249,000
 

 - the second-mortgage line of credit in the amount of $50,000
 

 - CitiBank credit card in the amount of $5,276
 

 - Key Bank loan in Carl's name in the amount of $12,643
 

 - ACS loan in the amount of $1,116
 

 - CSL loan in Lisa's name in the amount of $11,583
 

 - Methodist loan in Lisa's name in the amount of $3,000
 

 • Carl is required to maintain monthly payments at their current amounts but may increase payments if he chooses. He must maintain the current payoff schedules for all liabilities or pay them off sooner.
 

 • Carl was required to vacate the marital home within two days of the execution of the agreement.
 

 • Lisa had the option to transfer title and possession of the marital home to Carl within eighteen months of the agreement.
 

 • Lisa had the option to have Carl transfer all right, title, and interest in the marital home to Lisa, but Carl would remain responsible for the second mortgage loan.
 

 • Carl must pay lump-sum or fixed alimony for thirty-five years in the amount of $9,000 per month, with a thirty-five percent override calculated on Carl's salary and all other earned or investment income. All alimony is a claim against Carl's estate.
 

 • Alimony payments do not cease upon remarriage of Lisa or upon death of Lisa, but will be an asset of her estate.
 

 • Lisa maintained all household goods, furnishings, appliances, and other items of personalty in and around the marital house except for a short list of items.
 

 • If Lisa predeceases Carl before the child reaches the age of majority, Lisa's parents will have legal and physical custody of the child. If Lisa's parents and Lisa predecease Carl, Lisa's brother will have full custody.
 

 ¶ 37. Thus, the property-settlement agreement requires Carl to pay Lisa's medical-school student loans, as well as his own. The contract provisions wholly deprive Carl of seeing his daughter but require him to almost completely financially support his daughter. Carl eventually must pay for their child's vehicle of Lisa's choosing with no limitation on price, pay for the child's undergraduate and postgraduate
 education, and pay for the child's first wedding, with no limitation on price. Although Lisa also is a physician, Carl is paying on average approximately seventy-five percent of his earnings to support Lisa and the child. The agreement even had a provision to change the child's last name from Carl's surname to Lisa's.
 

 ¶ 38. Unconscionability looks at the circumstances existing at the time the contract was made as well as at the terms of the contract.
 
 Sanderson v. Sanderson
 
 ,
 
 170 So.3d 430
 
 , 437 (Miss. 2014). This Court looks within the agreement to determine if the terms caused a gross disparity between the contracting parties.
 
 Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock
 
 ,
 
 14 So.3d 695
 
 , 699 (Miss. 2009). For substantive unconscionability, "[a] much-quoted judicial definition is 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' "
 
 Smith v. Express Check Advance of Mississippi, LLC
 
 ,
 
 153 So.3d 601
 
 , 607 (Miss. 2014) (citations omitted). The circumstances surrounding the property-settlement agreement left Lisa with complete power and Carl with none. At that time, Carl's sexual preferences were not publicly known, nor was his HIV diagnosis. The Medical Board had not been made aware of his diagnosis, which could have greatly affected his medical career. Lisa additionally had access to email accounts that contained sensitive information. He was faced with losing complete contact with his only child. Thus, the settlement agreement is not merely "disadvantageous" to Carl, but instead shows gross disparity on its face. Carl had no choice but to sign the agreement at that time.
 

 ¶ 39. Although the majority states that Carl is "very stable" financially, it mischaracterizes the facts. The property-settlement agreement requires him to pay seventy-five percent of his salary to Lisa and to his daughter, whom he has not been allowed to see after signing the agreement. That Carl is able to live on the amount left over after his extravagant obligations is not the standard this Court should apply when determining unconscionability. "The law of Mississippi imposes an obligation of good faith and fundamental fairness in the performance of every contract ...."
 
 Covenant Health
 
 ,
 
 14 So.3d at 699
 
 . Fundamental fairness was absent from the circumstances surrounding this contract.
 
 [7]
 
 Hence, I believe that the property-settlement agreement is substantively unconscionable.
 

 C. Procedural Unconscionability
 

 ¶ 40. Further, procedural unconscionability may be proven by showing "a lack of knowledge, lack of voluntariness, ... disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms."
 
 MS Credit Center, Inc. v. Horton
 
 ,
 
 926 So.2d 167
 
 , 177 (Miss. 2006).
 

 ¶ 41. The trial court concluded that, because of his guilt, Carl freely and willingly had entered into the agreement. Even though Carl admitted feeling guilty for his actions, I cannot find that mere guilt coerced Carl into signing an agreement
 that gave complete custody and decision-making authority over Carl's minor child to Lisa, along with extraordinary and oppressive financial obligations.
 

 ¶ 42. Lisa had access to Carl's email accounts and forwarded Carl emails that were private as well as potentially detrimental to his future medical career. Carl alleged that Lisa had threatened to reveal his homosexuality and had threatened not only criminal prosecution, but medical licensure revocation or suspension, disclosure of his HIV diagnosis, embarrassment, and humiliation. Carl testified that Lisa had threatened exposure if he hired an attorney to represent him in the divorce or told any family members or friends about what was occurring. Yet Lisa had two attorneys and drafted the agreement to provide Carl only with the minimal amount he would need to live on per month. He had not been able to see or read the contract until the minutes immediately before he signed it. In addition, Carl stated that Lisa had threatened exposure if he rented an apartment or hotel room before the divorce was finalized. Consequently, Carl had lived in his car for several months. Carl had no bargaining power, had a lack of opportunity to study the contract, and had no input in drafting the agreement. Accordingly, I would find that the contract, too, was procedurally unconscionable. Based on the facts of this case and with so much at stake for Carl, two years was not an unreasonable time to wait to contest its unconscionable terms. The majority makes much of the clearness of the agreement's terms. With respect, I believe that the majority downplays the totality of Carl's position. Lisa did not have the upper hand; she had the only hand.
 

 D. Confidentiality
 

 ¶ 43. In addition, I take issue with the majority's decision to remand the chancellor's order sealing the court file for the trial court to conduct a balancing test to determine whether the court file should remain under seal. The majority states as its reason for remanding to the trial court that certain facts in this case have caused the Court to have significant public health and safety concerns. If this Court has public health and safety concerns, I believe the appropriate method to allay those concerns would be to report to the relevant governmental authority.
 

 ¶ 44. In this case, the relevant governmental authority would be the State Medical Board. As Professor Arthur R. Miller stated:
 

 [T]here are ways of dealing with the problem that are less destructive to the competing values than eviscerating the availability of protective orders .... [A] court has the power to disclose information revealed during litigation, especially to relevant governmental authorities, even after the parties have negotiated an agreement to maintain confidentiality .... Because the courts have the authority to protect public health and safety when necessary-and because judges seem to understand how to use their discretion to do just that-public health concerns do not justify curtailing the power to issue protective orders.
 

 Arthur R. Miller,
 
 Confidentiality, Protective Orders, and Public Access to the Courts
 
 ,
 
 105 Harv. L. Rev. 427
 
 , 478-79 (1991). Those relevant institutions must pursue the matter as they see fit.
 

 Id.
 

 ¶ 45. For example, in
 
 Anderson v. Cryovac, Inc.
 
 ,
 
 805 F.2d 1
 
 , 8 (1st Cir. 1986), the First Circuit Court of Appeals disclosed information to the relevant public-health authorities, finding that:
 

 The court's exception for disclosures to public health and environmental authorities had a compelling justification. In a
 case involving allegations that a city's water supply had been poisoned by toxic chemicals, the public interest required that information bearing on this problem
 
 be made available to those charged with protecting the public's health.
 

 This limited exception for disclosures to health officials would not by itself have defeated the protective order's intended goal of preventing a saturation of potential jurors with news reports of the allegations being made against the defendants. As long as dissemination of the information was not released to the general public, the court had good cause to continue the protection.
 

 Anderson
 
 ,
 
 805 F.2d at 8
 
 (emphasis added). The trial court in this case agreed with the parties that the record should be sealed. Should this Court have concerns relating to public health and safety, I believe that the appropriate avenue is to report those concerns to the State Medical Board. Because unsealing the record would do little to remedy any public health and safety concerns, I fail to see the public benefit gained by unsealing the record.
 

 CONCLUSION
 

 ¶ 46. Therefore, I dissent and would reverse the decision of the chancery court and remand this case to reopen the parties' divorce. Additionally, I disagree with the majority's decision to remand the chancellor's order sealing the court file.
 

 KITCHENS, P.J., JOINS THIS OPINION.
 

 Carl's position is further supported by the majority's use of the word "salacious" to describe his extramarital affairs. The word salacious connotes indecency, obscenity, or lewdness.
 
 See
 
 http://www.thesaurus.com/browse/salacious?s=t (last visited January 23, 2018). I dare say that the majority would not have chosen that particular term had Carl chosen to engage in heterosexual affairs. A search of the term "salacious" in opinions reveals the term's use in criminal cases involving pedophilia.
 
 See
 

 Shaffer v. State
 
 ,
 
 72 So.3d 1090
 
 , 1098 (Miss. Ct. App. 2010) ;
 
 Wade v. State
 
 ,
 
 583 So.2d 965
 
 , 968 (Miss. 1991).