# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CT-01332-SCT

*CAPLIN ENTERPRISES, INC. AND CHECK CASHERS & MORE, INC. d/b/a ZIPPY CHECK ADVANCE*

*v.*

*DENISE ARRINGTON, JOHNNY ARRINGTON, MARGIE BLACKLEDGE, BRENDA BONNER, JUANITA DAVIS, KENNETH DAVIS, KER'RITA EVANS, LARRY EVANS, GOLDIE GOODWIN, PANSAFAE GORDON, RAY CHARLES GRAY, MAMIE HENRY, CAROLYN HINTON, CURTIS HINTON, TAMMY HOWARD, KATHY JONES, VIOLA NASH, LANNY SKINNER, KATHLEEN STERLING AND JAMES WATTS*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/20/2011 |
| TRIAL JUDGE: | HON. LESTER F. WILLIAMSON, JR. |
| TRIAL COURT ATTORNEYS: | GEORGE CAYCE NICOLS |
| | HENRY PALMER |
| | CHRISTOPHER MICHAEL FALGOUT |
| COURT FROM WHICH APPEALED: | CLARKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | GEORGE C. NICOLS |
| ATTORNEYS FOR APPELLEES: | CHRISTOPHER MICHAEL FALGOUT |
| | EARL P. JORDAN, JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT OF THE CLARKE COUNTY CIRCUIT COURT IS AFFIRMED - 05/08/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### CONSOLIDATED WITH

NO. 2011-CT-01932-SCT

*CAPLIN ENTERPRISES, INC. AND CHECK
CASHERS & MORE, INC. d/b/a ZIPPY CHECK
ADVANCE*

*v.*

*JERALD AINSWORTH, MARY BATTLE, WILMA
CARSTARFHNUR, KIMBERLY GAINES, FRED
JONES, SHONDA LOVE, ARCHIE MOORE,
TOMECCA PICKETT, TAMMY PITTS, DORIS
TURNER, BORONICA WILLIAMSON AND
SHIRLEY WILSON*

## ON WRIT OF CERTIORARI

DATE OF JUDGMENT: 11/28/2011
TRIAL JUDGE: HON. VERNON R. COTTEN
COURT FROM WHICH APPEALED: NEWTON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANTS: GEORGE C. NICOLS
ATTORNEYS FOR APPELLEES: CHRISTOPHER MICHAEL FALGOUT
EARL P. JORDAN, JR.
NATURE OF THE CASE: CIVIL - CONTRACT
DISPOSITION: THE JUDGMENT OF THE COURT OF
APPEALS IS AFFIRMED IN PART AND
REVERSED IN PART. THE JUDGMENT OF
THE NEWTON COUNTY CIRCUIT COURT
IS AFFIRMED - 05/08/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.    In these consolidated cases, thirty-two plaintiffs who signed delayed-deposit check

agreements with Zippy Check Advance agreed that Zippy Check could pursue judicial

remedies against them to collect the debt, while any and all of their claims would be relegated to arbitration. The circuit courts found the arbitration agreements to be unconscionable and denied Zippy Check's motions to compel arbitration. The Court of Appeals affirmed as to one version of the agreement and reversed as to the other. We find that both versions of the arbitration agreement were so one-sided that they were substantively unconscionable and unenforceable. Therefore, we affirm in part and reverse in part the judgment of the Court of Appeals and affirm the judgments of the Circuit Court of Clarke County and the Circuit Court of Newton County.

## FACTS

¶2.     In 2010, the plaintiffs initiated two lawsuits against Zippy Check, a check-cashing business, alleging fraudulent misrepresentation and predatory lending, *inter alia*. One suit was filed in the Circuit Court of Clarke County; the other was filed in the Circuit Court of Newton County. Each plaintiff had signed one of two versions of a delayed-deposit agreement with Zippy Check; each agreement contained different arbitration provisions. Zippy Check filed a motion to compel arbitration in each case.

¶3.     Eight of the plaintiffs signed the older version of the delayed-deposit agreement. The front of this contract provided the amount financed, finance charge, annual percentage rate (described as "the cost of your fee as a yearly rate"), and the total owed. The reverse side of the contract consisted of several unnumbered paragraphs in fine print, including the following language:

> Should you default under this Agreement, the Company may, at its option, exercise any one of the following remedies:

. . .

2. If payment is not made after a written demand, the Company may go to court and get a judgment against you for the then unpaid amount of your obligation to the Company. In the event judgment is entered in the Company's favor, the Company may seek to collect this judgment through all judicial means necessary including attaching your non-exempt property, or garnishing your wages;

. . .

4. If this matter is placed with an attorney for collection of any and all monies due and owing the Company, all reasonable and necessary costs and expenses of collection, specifically including, but not limited to reasonable attorney fees and other damages as set forth by the court, shall be paid by you.

. . .

Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association ("AAA") and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

The Company shall not be liable to you for any indirect, special or consequential damages arising out of or related to this contract, even if the Company has been advised of the possibility of such damages. In no event shall the Company's liability, if any, exceed [t]he price paid by you for the services rendered hereunder. Where disclaimer, exclusion or limitation of liability for consequential or incidental damages is limited by law, our liability is limited to the greatest extent permitted by law.

Thus, the contract provided that Zippy Check could pursue "all" judicial remedies to collect on the debt, including attaching property and garnishing wages, as well as collecting "attorney fees and other damages as set forth by the court," but the plaintiffs had to bring all of their claims to arbitration. Additionally, the contract limited Zippy Check's liability to the "price paid by [the plaintiffs] for the services rendered."

4

¶4.     Twenty-four of the plaintiffs signed the "new" version of the contract. That contract provided:

> ARBITRATION PROVISION: Any and all disputes or agreements between the parties arising out of this Agreement or any prior agreement between them (except the Lender's rights to enforce the Borrower['s] payment obligations in the event of default by judicial or other process) shall be resolved, upon the election of you or us, by binding arbitration and in accordance with rules of the American Arbitration Association as presently published and existing. The parties agree to be bound by the decision of the arbitrator(s). The arbitration proceeding shall be a condition precedent to any court proceeding. Notwithstanding the applicability of any other law to any other provision of this Agreement, the Federal Arbitration Act, 9 U.S.C. Section 10 shall control the construction, interpretation, and application of the paragraph. Any issue as to whether the Agreement is subject to arbitration shall be determined by the arbitrator.

Like the old version of the contract, the new version allowed Zippy Check to pursue judicial remedies, while relegating any and all of the plaintiffs' claims to arbitration.

¶5.     Finding both arbitration provisions unconscionable, the Clarke County Circuit Court denied Zippy Check's motion to compel arbitration. The Newton County Circuit Court adopted those findings and also denied arbitration. Zippy Check appealed the denial of arbitration in both cases, and the cases were consolidated on appeal. The Court of Appeals reversed as to the twenty-four plaintiffs who had signed the newer agreement. ***Caplin Enters., Inc. v. Arrington***, 2011-CA-01332-COA, 2013 WL 1878879, **8-9 (¶¶ 41-42) (Miss. Ct. App. May 7, 2013). However, the Court of Appeals affirmed the circuit courts' denial of arbitration as to the eight plaintiffs who had signed the older agreement, finding that the arbitration provision in the older agreement was procedurally unconscionable. ***Id.*** at ** 7, 10 (¶¶ 29, 42). The Court of Appeals also found that both versions of the agreement

5

amounted to contracts of adhesion. *Id.* at \*\*6, 7 (¶¶ 27, 32). We granted Zippy Check's petition for writ of certiorari.

## DISCUSSION

¶6.     We begin by addressing a procedural matter attendant to Zippy Check's petition for certiorari.  Zippy Check sought certiorari review of the decision of the Court of Appeals on the older version of the contract. Nonetheless, having granted certiorari, this Court may review the Court of Appeals decision on the new version of the contract as well. Mississippi Rule of Appellate Procedure 17 states that, by granting a petition for writ of certiorari, this Court may "review any decision of the Court of Appeals." M.R.A.P. 17(a); *see also* M.R.A.P. 17(h) ("The Supreme Court's review on the grant of certiorari shall be conducted on the record and briefs previously filed in the Court of Appeals . . . ."); *Guice v. State*, 952 So. 2d 129, 133 (Miss. 2007) ("[W]e have the authority to address all issues raised before the Court of Appeals and addressed by that court . . . ."); *Lester v. State*, 744 So. 2d 757, 758 (Miss. 1999) (addressing as plain error a matter not raised in the certiorari petition). We proceed to review the entire decision of the Court of Appeals.

¶7.     This Court applies *de novo* review to the grant or denial of a motion to compel arbitration. *Sawyers v. Herrin-Gear Chevrolet Co., Inc.*, 26 So. 3d 1026, 1034 (Miss. 2010) (citing *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002)). We have adopted the federal policy favoring arbitration, under which "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Sawyers v. Herrin-Gear Chevrolet Co., Inc.*, 26 So. 3d 1026, 1034 (Miss. 2010) (quoting *Moses H. Cone Mem'l*

***Hosp. v. Mercury Constr. Corp.***, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)).

¶8.     We apply a two-pronged test to determine whether arbitration should be enforced under the Federal Arbitration Act. ***Rogers-Dabbs Chevrolet-Hummer, Inc. v. Blakeney***, 950 So. 2d 170, 173 (Miss. 2007) (citing ***Taylor***, 826 So. 2d at 713). Under the first prong, we determine "whether the parties have agreed to arbitrate the dispute." ***Blakeney***, 950 So. 2d at 173 (citing ***Taylor***, 826 So. 2d at 713). This prong has two aspects: "(1) whether there is a valid arbitration agreement and (2) whether the parties' dispute is within the scope of the arbitration agreement." ***Blakeney***, 950 So. 2d at 173 (citing ***Taylor***, 826 So. 2d at 713). If we determine that the parties did not agree to arbitrate the dispute at issue, the analysis is at an end. But if we conclude that the parties did agree to arbitrate, we will address the second prong, which is "whether legal constraints external to the parties' agreement foreclosed arbitration of those claims." ***Blakeney***, 950 So. 2d at 173 (quoting ***Taylor***, 826 So. 2d at 713).

       **I.      Whether the parties agreed to arbitrate the dispute.**

¶9.     To determine if the arbitration agreement is valid, we apply contract law to analyze whether a valid contract exists between the parties. ***Adams Cmty. Care Ctr., LLC v. Reed***, 37 So. 3d 1155, 1158 (Miss. 2010) (citing ***Grenada Living Ctr., LLC v. Coleman***, 961 So. 2d 33, 36-37 (Miss. 2007)). "The elements of a contract are '(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation.'" ***Reed***, 37 So. 3d at 1158 (quoting ***Coleman***, 961 So. 2d at 37). The plaintiffs focus on the alleged procedural and substantive unconscionability of the arbitration

7

clauses; they do not argue that the contract itself was invalid. Each agreement involved two or more contracting parties; consideration consisted of a cash amount in exchange for Zippy Check's cash-advance services; the agreement was sufficiently definite; and there was no legal prohibition precluding the contract. The parties have not presented any evidence that they lacked the legal capacity to contract or that mutual assent was lacking. Therefore, we find that each element of a contract is present.

¶10. Second, we must determine whether the disputed issue is within the scope of the arbitration agreement. *Blakeney*, 950 So. 2d at 173 (citing *Taylor*, 826 So. 2d at 713 (¶ 9)). The arbitration clause provided that "[a]ny controversy or claim arising out of or relating to" the contract shall be settled by arbitration. The plaintiffs alleged that Zippy Check engaged in predatory lending; made fraudulent misrepresentations concerning the terms of the transactions and in their collection attempts; breached the covenant of good faith and fair dealing; was negligent in handling the plaintiffs' accounts; caused the plaintiffs to suffer emotional distress and mental anguish; and was negligent in hiring, training, and supervising employees. The plaintiffs' claims against Zippy Check arise out of or relate to the Zippy Check delayed-deposit agreement, and the dispute is within the scope of the arbitration agreement. We find that the parties agreed to arbitrate the dispute.

**II. Whether legal constraints external to the parties' agreement foreclosed arbitration.**

¶11. The second prong of the test for whether arbitration should be enforced is to determine "whether legal constraints external to the parties' agreement foreclosed arbitration of those claims." *Blakeney*, 950 So. 2d at 173 (citing *Taylor*, 826 So. 2d at 713). Under the second

prong, we consider whether "defenses available under state contract law such as fraud, duress, and unconscionability" may invalidate the arbitration agreement. *Taylor*, 826 So. 2d at 713 (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686, 116 S. Ct. 1652, 134 L. Ed. 2d  902 (1996)). The only defense at issue is unconscionability, which "has been defined as 'an absence of meaningful choice on the part of one of the parties, together with contract terms [that] are unreasonably favorable to the other party.'" *Taylor*, 826 So. 2d at 715 (quoting *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998)).

¶12.    Two strains of unconscionability are recognized – procedural and substantive. *Taylor*, 826 So. 2d at 714. Procedural unconscionability can be shown by: (1) lack of knowledge; (2) lack of voluntariness; (3) inconspicuous print; (4) the use of complex, legalistic language; (5) disparity in sophistication or bargaining power of the parties; and/or (6) lack of opportunity to study the contract and inquire about the terms. *MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 177 (Miss. 2006) (quoting *Taylor*, 826 So. 2d at 714). "Substantive unconscionability may be proven by showing the terms of the arbitration agreement to be oppressive." *Taylor*, 826 So. 2d at 714 (citing *York v. Georgia-Pac. Corp.*, 585 F. Supp. 1265, 1278 (N.D. Miss. 1984)).

¶13.    Our analysis focuses on the substantive unconscionability of the arbitration agreements. A contract is substantively unconscionable if there is "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Entergy Miss. Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998) (quoting *Bank of Indiana, Nat'l Ass'n v. Holyfield*, 476 F. Supp. 104, 109 (S.D. Miss. 1979)). To determine whether a contract is substantively unconscionable, "we

9

look within the four corners of an agreement in order to discover any abuses relating to the specific terms which violate the expectations of, or cause gross disparity between, the contracting parties." *Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695, 699 (Miss. 2009) (quoting *Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 521 (Miss. 2005) (overruled on other grounds)).

¶14.　"Substantive unconscionability is proven by oppressive contract terms such that 'there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach.'" *Estate of Moulds*, 14 So. 3d at 699-700 (quoting *Holyfield*, 476 F. Supp. at 110). It is not necessary that arbitration agreements contain "mutual promises that give the parties identical rights and obligations, or that the parties must be bound in the exact same manner." 21 *Williston on Contracts* § 57:15 (4th ed. 2013) (quoting *Iwen v. U.S. West Direct, a Div. of U.S. West Mktg. Res. Group, Inc.*, 293 Mont. 512, 522, 977 P.2d 989, 996 (Mont. 1999)). But "disparities in the rights of the contracting parties must not be so one-sided and unreasonably favorable to the drafter . . . that the agreement becomes unconscionable and oppressive." 21 *Williston on Contracts* § 57:15 (4th ed. 2013) (quoting *Iwen*, 977 P.2d at 996). Under Mississippi Code Section 75-2-302, which has been applied to contracts other than for sale of goods, when a contract is found unconscionable, this Court "may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Miss. Code Ann. § 75-2-302 (Rev. 2002); *Estate of Moulds*, 14 So. 3d at 700.

¶15.    The contracts at issue, which Zippy Check drafted unilaterally and presented to its customers on a take-it-or-leave-it basis, were contracts of adhesion. A contract of adhesion has been described as one that is "drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms." *Taylor*,  826 So. 2d at 716 (quoting *Holyfield*, 476 F. Supp. at 108). These contracts "are usually prepared in printed form, and frequently at least some of their provisions are in extremely small print." *Taylor*, 826 So. 2d at 716 (quoting *Holyfield*, 476 F. Supp. at 108). Contracts of adhesion are not automatically unconscionable. *Estate of Moulds*, 14 So. 3d at 701. Nonetheless, we have held that a finding that a contract is adhesive "makes an argument targeting a provision for a substantive unconscionability review easier to prove." *Id.*

¶16.    This Court found a contract of adhesion to be substantively unconscionable in *Pitts v. Watkins*, 905 So. 2d 553 (Miss. 2005). Michael and Stephanie Pitts contracted with Charles Watkins to perform a home inspection on a residence the Pittses were interested in purchasing. *Id.* at 554. After Watkins performed the inspection, they purchased the home. *Id.* Soon after, the Pittses noticed problems with the home that should have been identified by the inspector and sued Watkins. *Id.* at 554-55. The trial court granted Watkins's motion for summary judgment on the basis of an arbitration clause in the home-inspection contract. *Id.* at 554. The arbitration clause stated "Any dispute concerning the interpretation of this Agreement or arising from the Inspection and Report (unless based on payment of fee) shall be resolved by . . . arbitration." *Id.* at 556. The arbitration clause forced the Pittses to arbitrate their claims against Watkins, while permitting Watkins to sue the Pittses in court

11

if they breached the contract by failing to pay the fee. *Id.* The contract also provided that if the Pittses breached the contract by failing to pay the fee, they would be responsible for administration costs, attorney's fees, and the cost of litigation. *Id.* This Court found the arbitration clause, which allowed Watkins to pursue a breach by the Pittses in court while requiring the Pittses to arbitrate any breach by Watkins, to be "clearly one-sided, oppressive, and therefore, substantively unconscionable." *Id.*

¶17. The Court also found the contract's limitation-of-liability clause to be substantively unconscionable. *Id.* This clause limited Watkins's liability to the amount paid for the inspection, $265. *Id.* We held that limitation-of-liability clauses are to be given strict scrutiny and will not be enforced "unless the limitation is fairly and honestly negotiated and understood by both parties." *Id.* (quoting *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 754 (Miss. 2003)). The Court quoted *Lucier v. Williams*, 366 N.J. Super. 485, 493, 841 A.2d 907, 912 (2004), which found a limitation-of-liability clause in a home-inspection contract to be unconscionable for these reasons:

> (1) the contract, prepared by the home inspector, is one of adhesion; (2) the parties, one a consumer and the other a professional expert, have grossly unequal bargaining status, and (3) the substance of the provision eviscerates the contract and its fundamental purpose because the potential damages level is so nominal that it has the practical effect of avoiding almost all responsibility for the professional's negligence.

*Pitts*, 905 So. 2d at 557. We concluded that the limitation-of-liability clause, which limited Watkins's liability to $265 while leaving the Pittses with no redress for their claimed damages of $30,000 to $40,000, was substantively unconscionable. *Id.* at 556. The Court also found that the contract's attempt to shorten the statute of limitations was unconscionable. *Id.*

12

at 558. We held that arbitration clause and the limitation-of-liability clause, taken together, deprived the Pittses of a meaningful remedy. *Id.*

¶18. In *Estate of Moulds*, we applied *Pitts* to find an arbitration clause in a nursing-home-admission agreement to be substantively unconscionable. *Estate of Moulds*, 14 So. 3d at 703. The Court deemed the contract to be one of adhesion because it was a preprinted contract presented to the weaker party on a take-it-or-leave-it basis. *Id.* at 701. The arbitration clause required the patient and responsible party to submit any claims to a grievance procedure but allowed the nursing-home facility to pursue its claims in court. *Id.* at 702 n.6. We deemed the clause unconscionable, noting that, in an earlier case, we had found that, under *Pitts*, this very clause was unconscionable because it was one-sided and oppressive. *Id.* at 703 (citing *Covenant Health Rehab. of Picayune, LP v. Brown*, 949 So. 2d 732, 739-41 (Miss. 2007) (overruled on other grounds)). In the earlier case, we also had relied on *Pitts* to find that a clause requiring the plaintiff to pay all costs of collection, including attorney's fees and litigation costs, to be so one-sided and oppressive as to be unconscionable. *Brown*, 949 So. 2d at 739.[1]

¶19. Applying this precedent, it is beyond question that the old version of the arbitration clause contained in the adhesive delayed-deposit check agreements was so one-sided as to

---

[1] We note our holding in *Sawyers v. Herrin-Gear Toyota*, 26 So. 3d 1026, 1035 (Miss. 2010), that an arbitration clause was not unconscionable although it permitted a car dealership to sue for replevin or possession of the vehicle while relegating the vehicle purchaser's claims to arbitration. The Court held the contract provided "a limited exception to arbitration . . . to obtain possession of the subject vehicle by replevin in the event of Sawyers's default under the terms of the sales contract." *Id.* The Court approved this limited exception because "there is collateral or a security interest at stake, because an arbitrator would not have authority to grant certain relief that only courts could give." *Id.* Because this case does not involve a security interest, we find that *Sawyers*'s reasoning is distinguishable.

be oppressive and substantively unconscionable. As in *Pitts*, the arbitration clause was oppressive because it forced the plaintiffs to arbitrate their claims, while permitting Zippy Check to pursue remedies for the plaintiffs' breach in court. Additionally, the contract foisted upon the plaintiffs Zippy Check's cost of hiring an attorney for collection, including "other damages" ordered by the court. A similar clause was found to be unconscionable in *Pitts*. That contract also attempted to limit Zippy Check's liability to the finance charge each plaintiff had paid in exchange for the cash.[2] While not all the contracts are in the record, the ones included show finance charges ranging from $65.85 to $72. As in *Pitts*, Zippy Check's contractually-limited liability is "so nominal that it has the practical effect of avoiding almost all responsibility" for a breach by Zippy Check, and is unconscionable. The arbitration clause and the limitation-of-liability clause, taken together, effectively deny the plaintiffs an adequate remedy against Zippy Check. The arbitration clause is clearly oppressive and substantively unconscionable. And the arbitration clause in the new version of the contract, which permitted Zippy Check to pursue judicial remedies while relegating the plaintiffs' claims to arbitration, is also clearly oppressive and substantively unconscionable pursuant to *Pitts*.

¶20.    The plaintiffs obviously were so desperate for immediate funds that they signed agreements for relatively small amounts of cash for a fee that, if characterized as interest,

---

[2] We consider the limitation-of-liability and attorney's fees-clauses because all clauses affecting dispute resolution are relevant to whether an arbitration agreement is substantively unconscionable. This Court in *Pitts* embraced this approach. *Pitts*, 905 So. 2d at 557 (stating that "the limitation of liability clause, when paired with the arbitration clause, effectively denies the plaintiff of an adequate remedy and is further evidence of substantive unconscionability").

14

would be usurious.[3] They simultaneously agreed that Zippy Check could institute judicial debt-collection proceedings against them in the event they defaulted on their payment obligations. The signers of the old version of the contract also agreed that they would pay Zippy Check's attorney's fees and other damages, and that Zippy Check's liability would be limited to the finance charge. The preprinted contracts were offered on a take-it-or-leave-it basis and were contracts of adhesion. While an arbitration agreement need not contain identical obligations, under the particular facts of this case, the arbitration agreements were unreasonably favorable to Zippy Check, oppressive, unconscionable, and unenforceable. Therefore, we affirm in part and reverse in part the judgment of the Court of Appeals and affirm the judgments of the circuit courts.

¶21. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENTS OF THE CIRCUIT COURT OF CLARKE COUNTY AND THE CIRCUIT COURT OF NEWTON COUNTY ARE AFFIRMED.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR, KITCHENS, PIERCE AND KING, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J.**

**COLEMAN, JUSTICE, DISSENTING:**

¶22. Applying the two-pronged inquiry for determining whether arbitration should be enforced, under the Court's policy favoring arbitration, I would hold that the arbitration provisions in both contracts are valid and enforceable. Therefore, I respectfully dissent.

---

[3] In 1997, this Court held that delayed-deposit check transactions charging more than eight percent interest per annum were loans that violated the civil usury statute. *State v. Roderick*, 704 So. 2d 49, 53 (Miss. 1997). In response, the Legislature enacted the Mississippi Check Cashers Act, providing that the fees charged are "service fees," not interest. Miss. Code Ann. § 75-67-515(4) (Rev. 2009).

¶23.   The Court of Appeals held that the more extensive arbitration provision in the newer contract was sufficient and that arbitration should be enforced as to the twenty-four plaintiffs who signed that contract. *Caplin Enters., Inc. v. Arrington*, 2011-CA-01332-COA, 2013 WL 1878879, **9-10 (¶¶ 41-42) (Miss. Ct. App. May 7, 2013).  Because I agree with the Court of Appeals about the arbitration clause in the newer contract, and because the parties did not seek review of that decision, my discussion is limited to the older version of the contract.

¶24.   Mississippi follows the federal policy favoring arbitration, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Sawyers v. Herrin-Gear Chevrolet Co., Inc.*, 26 So. 3d 1026, 1034 (¶ 20) (Miss. 2010) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).  As the majority explained, we apply a two-pronged test to determine whether arbitration should be enforced.  I agree with the majority that the Zippy Check agreements were valid contracts and the claims are within the scope of the arbitration agreements.  Thus, the parties agreed to arbitrate the dispute, and the first prong of the test is satisfied.  I disagree with the majority, however, as to the second prong – whether legal constraints external to the parties' agreement foreclosed arbitration.

¶25.   As the majority stated, unconscionability is the only defense at issue. "Unconscionability has been defined as 'an absence of meaningful choice on the part of one of the parties, together with contract terms [that] are unreasonably favorable to the other party.'" *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 715 (¶ 17) (Miss. 2002) (quoting *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (¶ 11) (Miss. 1998)).  Two types of

16

unconscionability have been recognized by the courts – procedural and substantive. *Taylor*, 826 So. 2d at 714 (¶ 13).

## A. Procedural Unconscionability

¶26. Procedural unconscionability can be shown by: (1) lack of knowledge; (2) lack of voluntariness; (3) inconspicuous print; (4) the use of complex, legalistic language; (5) disparity in sophistication or bargaining power of the parties; and/or (6) lack of opportunity to study the contract and inquire about the terms. *MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 177 (¶ 30) (Miss. 2006) (quoting *Taylor*, 826 So. 2d at 714 (¶ 13)). The last three factors are dispensed with easily. The arbitration clause clearly states that any claims arising out of or relating to the agreement are subject to arbitration, and it does not contain complex legalistic language. In addition, no argument has been made regarding disparity in sophistication or bargaining power of the parties or lack of opportunity to read the contract. In fact, the check manager testified that she gives customers an opportunity to review the contract and ask questions.

¶27. The only evidence presented by the plaintiffs pertaining to the lack of knowledge factor is the lack of knowledge of the check manager for Zippy Check, not the lack of knowledge of the plaintiffs. Although the check manager's knowledge is not at issue, she indicated an understanding of the arbitration clause. She said that, if customers asked her what the arbitration provision meant, she would explain that it meant they were waiving their right to a jury trial. Regardless, the check manager did not have a duty to explain all of the contract terms to the plaintiffs. *Horton*, 926 So. 2d at 177 (¶ 32) ("[T]his Court has never held that one party to an arm's-length contract has an inherent duty to explain its terms to the

17

other."). It is well established that individuals "have an inherent duty to read the terms of a contract prior to signing[.]" *Id.* at 177 (¶ 31). "[A] party may neither neglect to become familiar with the terms and conditions and then later complain of lack of knowledge, nor avoid a written contract merely because he or she failed to read it or have someone else read and explain it." *Id.* There is no evidence of lack of knowledge here.

¶28. Regarding the inconspicious print factor, the Court of Appeals found that the arbitration provision in the older agreement was in a "much smaller font" than the transactional terms. *Caplin*, 2013 WL 1878879, *6 (¶ 28). Although the majority does not address it, I will discuss the font size issue because the Court of Appeals' language regarding the "much smaller font" is the only issue actually raised in Zippy Check's petition for writ of certiorari. Zippy Check argues that the difference in font sizes does not render the arbitration provision procedurally unconscionable, because it does not rise to the level of the significant difference at issue in *East Ford v. Taylor*, in which the Court held that an arbitration clause was procedurally unconscionable where it was "less than one-third the size of many other terms in the document." *Taylor*, 826 So. 2d at 716-17 (¶ 21).

¶29. The font for the additional terms on the back of the Zippy Check agreement is indeed smaller than the font used for the transactional terms on the front. However, the arbitration provision is formatted identically to all of the "additional" terms, and the arbitration clause is not hidden in a smaller font among the other terms. There is no requirement that arbitration provisions be set off or distinguished more than other provisions. In fact, the Federal Arbitration Act prohibits putting additional requirements on arbitration provisions;

18

rather, arbitration provisions must be treated equally with other contractual terms. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). We have written:

> The United States Supreme Court – whose decisions the justices on this Court are bound by oath to follow – has clearly declared that Section 2 of the FAA prohibits courts (including this Court) from singling out arbitration provisions for special treatment. That is to say, it prevents courts from placing more stringent requirements for the enforcement of arbitration provisions than for other provisions in a contract. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996).

*Horton*, 926 So. 2d at 173-74 (¶ 16). An arbitration clause is sufficient if it is "at least as open and obvious as other contractual provisions." *Id.* at 178 (¶ 34). Such is the case here, and the arbitration provision is not so inconspicious as to be procedurally unconscionable.

¶30. The final factor is lack of voluntariness. The Court has said that "[l]ack of voluntariness is demonstrated in contracts of adhesion," which often arise "when there is a great imbalance in the parties' relative bargaining power" or where the contract is "presented to a party on a take it or leave it basis." *Taylor*, 826 So. 2d at 715-16 (¶¶ 18-19) (quoting *Entergy Miss., Inc.*, 726 So. 2d at 1207-1208 (¶¶ 12, 15) (internal citations omitted)). The majority finds that both contracts at issue amounted to contracts of adhesion. (Maj. Op. ¶ 15.) However, contracts of adhesion are not automatically void. *See Taylor*, 826 So. 2d at 716 (¶ 20) (quoting *Hughes Training, Inc. v. Cook*, 254 F.3d 588, 593 (5th Cir. 2001)).

> The fact that an arbitration agreement is included in a contract of adhesion renders the agreement procedurally unconscionable *only* where the stronger party's terms are unnegotiable *and* "the weaker party is prevented by market factors, timing[,] or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all."

*Taylor*, 826 So. 2d at 716 (¶ 20) (quoting *Entergy Miss., Inc.*, 726 So. 2d at 1207 (¶ 12) (emphasis added)). Accordingly, for an arbitration provision to be rendered procedurally

19

unconscionable as part of a contract of adhesion, two factors must be present: (1) the stronger party's terms are unnegotiable, *and* (2) the weaker party is prevented from contracting with another party by market factors, timing, or other pressures.

¶31. The terms in Zippy Check's preprinted, form agreement are not negotiable. The check manager testified that if customers did not agree to the terms, she would not be able to loan them money. Further, the argument can be made that there is an imbalance in the bargaining power of parties to a delayed-deposit agreement, as the party seeking cash advance services has a need for immediate cash that is not otherwise available. However, the customers have the option of choosing from numerous entities that provide the same service. Therefore, while the terms of the preprinted, form agreement may not be negotiable on an individual basis, customers certainly have the ability to chose another check cashing business whose terms may be more favorable. The plaintiffs presented no evidence that they were "prevented by market factors, timing[,] or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all." *Taylor*, 826 So. 2d at 716 (¶ 20). Therefore, I do not find the arbitration provision to be procedurally unconscionable as part of a contract of adhesion.

### B. Substantive Unconscionability

¶32. Because the Court of Appeals agreed with the trial court that the arbitration provision in the older agreement was procedurally unconscionable, it did not address whether that agreement was substantively unconscionable, nor did the parties raise substantive unconscionability in their petition. However, the majority's analysis is based solely on substantive unconscionability. (Maj. Op. ¶13.) The arbitration provision used is a standard

20

arbitration clause, and the requirement to arbitrate is not in itself unconscionable. However, the plaintiffs claim – and the majority accepts – that the agreement unfairly allowed Zippy Check to pursue judicial remedies for debt collection while limiting the plaintiffs to arbitration for all claims.

¶33. The clause providing that Zippy Check could pursue judicial remedies for debt collection was separate from the arbitration clause, which required "[a]ny controversy or claim arising out of or relating to this contract" to be settled by arbitration. Construing the terms together, it is clear that Zippy Check could use judicial remedies only for debt collection, not for all claims against the plaintiffs. Should any claim or controversy arise, other than debt collection, Zippy Check would be limited to arbitration. A similar situation was present in *Sawyers v. Herrin-Gear Chevrolet*, where a contract for the purchase of a vehicle required arbitration for any claims related to the purchase of the vehicle, "[e]xcept for an action by [d]ealer to obtain possession and/or replevin of the [v]ehicle." *Sawyers*, 26 So. 3d at 1029 (¶ 5). In that case the Court wrote:

> The arbitration agreement does permit Herrin-Gear to bring an action for possession and/or replevin of the vehicle purchased by Sawyers in a court of law rather than resolving the matter by binding arbitration. However, mutuality of obligation is not required for a contract to be enforceable. *Murphy v. Amsouth Bank*, 269 F. Supp. 2d 749, 752 (S.D. Miss. 2003). *See also McKenzie Check Advance of Miss., LLC v. Hardy*, 866 So. 2d 446, 453 (Miss. 2004) ("[p]ursuant to Mississippi law, mutuality of obligation is not required for an arbitration agreement to be enforceable . . ."). Also, as discussed by the trial court, "[i]t is common for such provisions to be contained in an arbitration agreement where there is collateral or a security interest at stake, because an arbitrator would not have authority to grant certain relief that only courts could give." As such, the provision whereby a limited exception to arbitration is given only to Herrin-Gear to obtain possession of the subject vehicle by replevin in the event of Sawyer's default under the terms

21

of the sales contract does not render the arbitration agreement substantively unconscionable.

*Sawyers*, 26 So. 3d at 1035 (¶ 22).  Likewise, an exception to arbitration for debt collection should not render the agreement substantively unconscionable.

¶34.    In *Covenant Health & Rehabilitation of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695 (Miss. 2009), the Court wrote:

> Substantive unconscionability is proven by oppressive contract terms such that "there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach . . . ." [*Bank of Indiana v. Holyfield*, 476 F. Supp. 104, 110 (S.D. Miss. 1979)]. One example of a one-sided agreement is one that allows one party to go to court, but restricts the other to arbitration. *See Pridgen v. Green Tree Fin. Servicing Corp.*, 88 F. Supp. 2d 655, 658 (S.D. Miss. 2000).

*Estate of Moulds*, 14 So. 3d at 699-700 (¶ 12).  The agreement at issue is not so one-sided that the plaintiffs are left without a remedy.  They can take their claims to arbitration. Notably, although *Moulds* cited *Pridgen v. Green Tree* for the premise that an agreement permitting one party to go to court but restricting the other party to arbitration is a one-sided agreement, the *Pridgen* Court upheld the arbitration agreement in that case, writing:

> . . . Green Tree argues that such one-sidedness has been held to be an insufficient basis upon which to find the arbitration clause unconscionable, citing *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173 (3rd Cir. 1999) and *Green Tree Fin. Corp. of Ala. v. Vintson*, [753 So. 2d 496 (Ala. 1999).] In *Harris*, addressing the very arbitration clause that is involved in the case sub justice, the United States Court of Appeals for the Third Circuit held that, under Pennsylvania law, mutuality of obligation was not required for the arbitration clause to be enforceable, as long as the underlying contract was supported by consideration. *Harris*, 183 F.3d at 179-81. That is, the fact that judicial remedies were not available to both parties did not make the clause unconscionable or unenforceable. The Third Circuit also noted that this holding comported with the majority opinion of other federal courts that had addressed the issue. *Id.* at 180 (citing *Doctor's Assocs., Inc. v. Distajo*, 66

F.3d 438 (2d Cir. 1995); *Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp.*, 878 F.2d 167 (6th Cir. 1989); *Dorsey v. H.C.P. Sales, Inc.*, 46 F. Supp. 2d 804 (N.D. Ill. 1999); *Randolph v. Green Tree Fin. Corp.*, 991 F. Supp. 1410 (M.D. Ala. 1997)).

The United States Court of Appeals for the Fifth Circuit has not directly addressed this issue. However, Mississippi law is in accord with the law of Pennsylvania, upon which the Third Circuit based its decision in *Harris*, in that mutuality of obligation is not required for a contract to be enforceable. *Clinton Serv. Co. v. Thornton*, 233 Miss. 1, 100 So. 2d 863, 866 (1958). Therefore, the arbitration clause is not unenforceable solely because it is one-sided. Moreover, even though the Court could still consider the one-sidedness as a factor in determining whether the clause was substantively unconscionable, Plaintiff's only assertion that the clause is substantively unconscionable is that it is one-sided. As stated above, however, the majority opinion seems to be that such one-sidedness is not, alone, sufficient to find the clause unconscionable. The Court finds persuasive the reasoning of the Third Circuit in *Harris*, as well as the cases cited therein. Accordingly, the Court finds that the arbitration clause is not unconscionable, especially in light of the federal policy favoring arbitration. The Court thus finds that the motion of Green Tree to dismiss and compel arbitration should be granted.

*Pridgen*, 88 F. Supp. 2d at 658-59 (footnote omitted). Also worth noting is the fact that the issue is well-settled in Mississippi federal courts. In *Murphy v. Amsouth Bank*, 269 F. Supp. 2d 749 (S.D. Miss. 2003), the Southern District Court wrote:

Regarding the mutuality issue, plaintiffs argue because the arbitration agreement mandates arbitration of any claim they might choose to assert, while reserving unto AmSouth the right to utilize the remedies of foreclosure, selfhelp repossession[,] and replevin in a court, the agreement lacks mutuality of obligation and is for that reason unconscionable and unenforceable. This court has previously rejected this identical argument. *See First Family Financial Services, Inc. v. Fairley*, 173 F. Supp. 2d 565, 572 (S.D. Miss. 2001) (holding that "'mutuality of obligation is not required for a contract to be enforceable,' and an 'arbitration clause is not unenforceable solely because it is one-sided.'") (quoting *Pridgen v. Green Tree Financial Servicing Corp.*, 88 F. Supp. 2d 655, 659 (S.D. Miss. 2000)); *see also Raesly v. Grand Housing, Inc.*, 105 F. Supp. 2d 562, 570 (S.D. Miss. 2000) (same).

*Murphy*, 269 F. Supp. 2d at 752.

23

¶35. The majority relies on *Pitts v. Watkins*, 905 So. 2d 553 (Miss. 2005), in which the Court held that an arbitration clause containing some of the same restrictions as the instant contract was substantively unconscionable. *Pitts*, 905 So. 2d at 555 (¶ 10). The arbitration clause in *Pitts* restricted the parties to arbitration, with the exception that Watkins could pursue claims for nonpayment of his fee in court. *Id.* The contract also limited the amount that the Pittses could recover to the amount paid for their home inspection and imposed a one-year statute of limitations. *Id.* at 556-58 (¶¶ 12, 17). The Court held that "[t]he limitation of liability clause, when paired with the arbitration clause, effectively denies the plaintiff . . . an adequate remedy and is further evidence of substantive unconscionability." *Id.* at 557 (¶ 15).

¶36. The contract in *Pitts* was similar to the Zippy Check contract in that both parties were required to take all claims to arbitration, with one exception. In *Pitts*, Watkins was required to arbitrate all claims with the exception of disputes based on the payment of his fee. *Id.* at 560 (¶ 28) (Dickinson, J., dissenting). Likewise, here, Zippy Check is required to arbitrate claims arising out of the contract with the exception of debt collection. As discussed above, in *Sawyers v. Herrin-Gear Chevrolet*, the Court upheld an arbitration agreement where the contract required arbitration for any claims related to the purchase of the vehicle, "[e]xcept for an action by [d]ealer to obtain possession and/or replevin of the [v]ehicle." *Sawyers*, 26 So. 3d at 1029 (¶ 5). The holding in *Sawyers* was subsequent to *Pitts v. Watkins* and is consistent with numerous decisions from Mississippi federal courts. Thus, I would hold, consistent with *Sawyers*, that the fact that one party retains the option to use judicial remedies for specific purposes – especially a purpose that generally requires judicial

24

enforcement (i.e., collection, replevin, repossession) – should not invalidate an agreement to arbitrate. *Pitts v. Watkins* was an exception to the general rule and, in my opinion, it should be overruled.

¶37. Relying on *Pitts v. Watkins*, the majority finds that the contract is unconscionable because it limits Zippy Check's liability and provides that the plaintiffs would have to pay attorney's fees and the cost of collection. (Maj. Op. ¶ 19.) That issue was not raised by the plaintiffs. I recognize that "[c]lauses that limit liability are given strict scrutiny by this Court and are not to be enforced unless the limitation is fairly and honestly negotiated and understood by both parties." *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 754 (¶ 18) (Miss. 2003). However, that issue is for the arbitrator. After finding that the dispute is subject to arbitration and that the arbitration agreement itself is not unconscionable, any other claims related to the contract must be submitted to arbitration. *See Rent-A-Ctr., W., Inc. v. Jackson*, 130 S. Ct. 2772, 2778 (2010) (A "challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) (challenges to the contract other than to the arbitration provisions should be considered by the arbitrator); *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003) ("Only if the arbitration clause is attacked on an independent basis can the court decide the dispute; otherwise, general attacks on the agreement are for the arbitrator."). Arbitration is limited to choice of forum. *Estate of Moulds*, 14 So. 3d at 697, 703 (¶¶ 3, 25). The limitation of liability provision in the Zippy Check contract is separate from the arbitration clause. Thus, the validity of that provision

– and allegations of unconscionability as to any other provision in the contract – should be submitted to the arbitrator.

¶38. The majority also relies on *Estate of Moulds* to support its position that the arbitration agreement is substantively unconscionable. The Court's finding of unconscionability in *Estate of Moulds* was based on reasons not at issue here. The contract in that case had been the subject of several lawsuits that had come before this Court and the Court of Appeals. In each case, the appellate courts found additional provisions of the contract to be unconscionable, each time striking the unconscionable provisions, but enforcing arbitration. In *Estate of Moulds*, the Court wrote:

> [E]ach time this contract has come before this Court, the litigants have urged additional terms to be declared unconscionable and unenforceable. In *Stephens*, clauses E7 and E8 were invalidated by this Court. [*Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 523-24 (Miss. 2005).] In *Brown*, in addition to E7 and E8, this Court reformed the contract to invalidate clauses C5, C8, E5, E6, E12, E16, and the last sentence of the arbitration agreement. [*Covenant Health Rehab of Picayune, L.P. v. Brown*, 949 So. 2d 732, 741-42 (Miss. 2007).] Covenant Health concedes that **all these provisions are unenforceable** in this case. In a previous case before the Court of Appeals, Covenant Health conceded the unenforceability of all these provisions, as well as two additional clauses, D4 and E13. *Covenant Health & Rehab. of Picayune, LP v. Estate of Lambert*, 984 So. 2d 283, 287 (Miss. Ct. App. 2006). In another case before the Court of Appeals, the Court of Appeals found several provisions unenforceable, including E14, which was held to be in violation of a statute. [*Trinity Mission of Clinton, LLC v. Barber*, 988 So. 2d 910, 923 (Miss. Ct. App. 2007).]

*Estate of Moulds*, 14 So. 3d at 701-02 (¶ 20) (emphasis in original, footnotes omitted). By the time the contract was before the Court in *Estate of Moulds*, no less than a dozen separate provisions had been struck from the contract. *Id.* And in *Estate of Moulds*, the Court found at least three more "questionable provisions." *Id.* at 702 (¶ 21). Further, the arbitration

26

forum required by the agreement was no longer available to the parties. *Id.* at 706-709 (¶¶ 36-45). The Court held that the unavailability of the arbitration forum, "coupled with a multitude of unconscionable provisions" in the contract, rendered the entire contract unconscionable. *Id.* at 703 (¶ 25). The Court wrote:

> Based on the issues considered and the application of basic contract-law principles, we conclude that this contract is unconscionable, as it contains numerous unconscionable provisions. The contract weaves unconscionable nonforum terms into the arbitration provision. Arbitration is limited to choice of forum. *See* ***Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth***, 473 U.S. 614, 628, 105 S. Ct. 3346, 3354, 87 L. Ed. 2d 444, 456 (1985); ***Stephens***, 911 So. 2d at 525. This conclusion is consistent with our body of law regarding the enforcement of contracts, and conforms to the national body of law addressing similar issues. The course we follow exceeds the excision of numerous unconscionable provisions, and voids the contract. Furthermore, since arbitration is about forum choice, were we to assume arguendo the validity of the contract, the contested agreement to arbitrate still would be unenforceable, as the forum putatively agreed upon is unavailable. The learned trial judge rightly denied arbitration as the forum for this dispute.

***Estate of Moulds***, 14 So. 3d at 697-98 (¶ 3). Unlike the contract at issue in ***Estate of Moulds***, the contract in the case sub judice has not woven "unconscionable nonforum terms into the arbitration provision." *Id.* The nonforum terms, unconscionable or not, are not part of the arbitration clause. The arbitration clause is simply one term in the contract; it stands alone, as do the other provisions. The plaintiffs have not asked the courts to invalidate the entire contract, and I decline to do so.

¶39. We are called upon to consider only whether the arbitration clause should be enforced. "The party resisting arbitration must shoulder the burden of proving a defense to arbitration." ***Norwest Fin. Miss., Inc. v. McDonald***, 905 So. 2d 1187, 1193 (¶ 11) (Miss. 2005) (citing ***Green Tree Fin. Corp.-Alabama v. Randolph,*** 531 U.S. 79, 92 (2000)). The plaintiffs have

the burden of proving that the arbitration clause is unconscionable. Zippy Check does not bear that burden. Nor do we. I find no evidence that the arbitration provision itself was oppressive or left the plaintiffs without a remedy. Rather, the provision "merely submits the question of liability to a forum other than the courts." *Horton*, 926 So. 2d at 179 (¶ 38) (citing *Taylor*, 826 So. 2d at 716 (¶ 20)).

¶40. In my opinion, the arbitration provision is neither procedurally nor substantively unconscionable and no legal constraints external to the parties' agreement foreclose arbitration. Disputes about any other provisions of the contract should be submitted to the arbitrator. Therefore, I would reverse the Court of Appeals' judgment affirming the trial court's denial of Zippy Check's motion to compel arbitration as to the eight plaintiffs who signed the older agreement and remand the cases for the parties to submit to arbitration.

**DICKINSON, P.J., JOINS THIS OPINION.**